TONY JAMES BARNHARDT v. YELLOW CAB COMPANY, INC. AND GREAT AMERICAN INSURANCE COMPANY.

(Filed 4 February, 1966.)

**1. Master and Servant § 45—**

While the North Carolina Workmen's Compensation Act must be liberally construed to accomplish its humane purpose of providing swift and certain compensation to injured workmen, the purpose of the Act is also to insure a limited and determinate liability for employers, and the Supreme Court may not, under the guise of construction, enlarge its scope beyond the limits prescribed by the statute.

**2. Master and Servant § 69—**

"Exceptional reasons" for which another method of computing the average weekly wage may be resorted to under the provisions of G.S. 97-2(5), refer to exceptional circumstances relating to the employment and not to the severity of the injury, and computation of the average weekly wage under this method must relate to the employment in which the employee was injured.

**3. Same—**

Where an employee holds two separate jobs and is injured in one of them, the award may not be based on his aggregate compensation from both employments, but must relate only to the wages earned in the job producing the injury.

**4. Statutes § 5—**

Where a statute excludes from its general operation a single specific circumstance, it is evidence of the legislative intent not to exempt other circumstances not expressly provided for by the statute.

**5. Constitutional Law § 10—**

The courts must construe a statute in accordance with the expressed legislative intent.

**6. Master and Servant § 96—**

Where error is found in respect to the sole controversy on appeal of the employer and the insurance carrier, motion of claimant that defendants be required to pay a reasonable fee to plaintiff's attorney as part of the costs must be denied. G.S. 97-88.

APPEAL by defendants from *Houk, J.,* May 17, 1965 Schedule A Session of MECKLENBURG.

Proceeding under Workmen's Compensation Act.

Defendants admit liability. The controversy relates solely to the ascertainment of claimant's "average weekly wage."

The facts material to this appeal are not in dispute. On March 7, 1964, plaintiff Barnhardt, aged 25, had been employed for six months by the National Cash Register Company (National) as a machine-maintenance man at an average weekly wage of $68.00. This was a day-time job during five days a week. Needing more money for the support of his growing family, plaintiff, on February 7, 1964, secured a part-time job driving a taxicab three nights a week for defendant Yellow Cab Company (Cab Company). He worked four hours on Wednesday nights, six hours on Fridays, and eight hours on Saturdays. The Commission found that plaintiff's average weekly income as a taxicab driver was $26.90. In their brief, defendants waive any objection to this finding.

On the night of March 7, 1964, while plaintiff was driving his cab, a passenger shot him three times in the head and robbed him. As a result, plaintiff is totally and permanently disabled and has serious facial and bodily disfigurement. He is industrially blind; his hearing is impaired; his right arm and hand are useless. He has lost his equilibrium and. is subject to epileptic seizures. He requires an attendant around the clock.

Upon the hearing of plaintiff's claim for compensation, the deputy commissioner found, *inter alia,* that:

"Due to the fact that the plaintiff had only been driving for the Yellow Cab Company on a part-time basis for less than five weeks, it would be manifestly unfair to the employee to take only the earnings during the five-week period that he was with Yellow Cab Company to establish his average weekly wage;

that to do so would establish his average weekly wage at approximately one-third of his actual earnings at the time; that for exceptional reasons it is found as a fact that such a method of computation would be unfair and that it would not most nearly approximate the amount which the injured employee would be earning were it not for the injury; it is found as a fact that the plaintiff's average weekly wage at the time of his injury by accident was $94.45."

The sum of $94.45 is the average of plaintiff's combined weekly wages from both Cab Company and National. The hearing commissioner awarded plaintiff $37.50 per week for his lifetime, the maximum rate allowable. Defendants were further ordered to pay medical expenses incurred and a weekly sum in lieu of nursing services and institutional care.

Defendants appealed to the Full Commission, contending *inter alia,* that, under G.S. 97-2(5), plaintiff was entitled to compensation based solely upon the average weekly wages he was earning from Cab Company, the employment in which he was injured, without regard to wages received from his full-time job with National. The Full Commission sustained the hearing commissioner, adopting as its own his findings of fact, conclusions of law, and award. Defendants appealed to the Superior Court, which entered judgment overruling each of defendants' objections and exceptions and affirming the award of the Full Commission. From this judgment defendants appeal, assigning errors.

*Robert L. Scott for plaintiff appellee.*
*Helms, Mulliss, McMillan & Johnston by Larry J. Dagenhart for defendant appellants.*

SHARP, J. When an employee who holds two separate jobs is injured in one of them, may his compensation be based on his average weekly wages from both, or must it relate only to the wages earned in the job producing the injury? This is the determinative question posed by this appeal.

Compensation to an injured employee under the North Carolina Workmen's Compensation Act is based upon his *average weekly wages* as defined by G.S. 97-2(5), the pertinent portions of which follow, with our enumerations, paragraphing and italics:

"Average Weekly Wages.—(1) *'Average weekly wages' shall mean the earnings of the injured employee in the employment in which he was working at the time of the injury* during the period of fifty-two weeks immediately preceding the date of

the injury, including the subsistence allowance paid to veteran trainees by the United States government, provided the amount of said allowance shall be reported monthly by said trainee to his employer, divided by fifty-two; but if the injured employee lost more than seven consecutive calendar days at one or more times during such period, although not in the same week, then the earnings for the remainder of such fifty-two weeks shall be divided by the number of weeks remaining after the time so lost has been deducted. (2) Where the employment prior to the injury extended over a period of less than fifty-two weeks, the method of dividing the earnings during that period by the number of weeks and parts thereof during which the employee earned wages shall be followed; provided, results fair and just to both parties will be thereby obtained. (3) Where, by reason of a shortness of time during which the employee has been in the employment of his employer or the casual nature or terms of his employment, it is impractical to compute the average weekly wages as above defined, regard shall be had to the average weekly amount which during the fifty-two weeks previous to the injury was being earned by a person of the same grade and character employed in the same class of employment in the same locality or community.

"(4) *But where for exceptional reasons the foregoing would be unfair, either to the employer or employee, such other method of computing average weekly wages may be resorted to as will most nearly approximate the amount which the injured employee would be earning were it not for the injury."*

*   *   *

"(5) In case of disabling injury to a volunteer fireman under compensable circumstances, compensation payable shall be calculated upon the average weekly wage the volunteer fireman was earning in the employment wherein he principally earned his livelihood as of the date of injury."

As enumerated above, G.S. 97-2(5) provides five possible methods of determining "average weekly wages." In making its award to plaintiff, the Industrial Commission purported to use method (4). Because plaintiff had been driving the cab for only five weeks when he was injured, defendants concede that the Commission was authorized to use method (4) to arrive at an average weekly wage *in his taxicab employment* of $26.90, a sum larger than plaintiff had earned during any week of cab driving. Defendants maintain, however, that 60% of this figure, or $16.14 per week, is the limit of their liability.

· Defendants' position is that the Commission may require an employer to pay compensation only as authorized in the Act, which does not permit aggregation of wages from different employments. Specifically they contend: (a) The first declaration in G.S. 97-2(5), *i.e.,* that "average weekly wages *shall mean* the earnings of the injured employee in the employment in which he was working at the time of the injury," is applicable not only to method (1) but to all other methods except (5), which is expressly exempted from this absolute limitation. Although method (3) permits the wages of *another* individual to be considered, such wages must be earned "in the same class of employment," in the same community, and "by a person of the same grade and character." (b) In all methods, G.S. 97-2(5) requires that results fair to both employer and employee be obtained. It would be unfair to an employer and his carrier to burden them with a liability out of proportion to employer's payroll and the premium computed thereon.

Plaintiff contends: (a) The extent of his injuries, which eliminates any possibility that he will ever again be gainfully employed, provides the "exceptional reasons" for which method (4) was enacted. (b) It would be unfair to the employee to base his compensation on an average weekly wage which was only about one-third of his actual earnings. (c) Method (4) authorizes the computation which will most nearly approximate the average weekly wages the employee *would be earning* had he not been injured. Since this provision does not, *ipsissimis verbis,* restrict such earnings to the employment in which the injury occurred, the Legislature must have contemplated the aggregation of earnings from any and all sources. (d) In determining "disability," the employer is given the benefit of the employee's earnings "in the same *or any other employment.*" G.S. 97-2(9). (Italics ours.) Therefore, in exceptional cases, G.S. 97-2(5) should be liberally construed to give the injured employee the benefit of his earnings in that other employment. (e) This Court in *Casey v. Board of Education,* 219 N.C. 739, 14 S.E. 2d 853, has already decided in plaintiff's favor the question presented.

According to Larson, Workmen's Compensation Law § 60.31 (1961), "It is generally held, sometimes by virtue of an express statute and sometimes not, that the wage basis of an employee injured in one of two related employments in which he is concurrently employed should include his earnings from both employments. Most concurrent employment controversies therefore resolve themselves into the question of what employments are sufficiently related to come within the rule." To the same effect, see 99 C.J.S., Workmen's

Compensation § 294 (d) (1958); 11 Schneider, Workmen's Compensation Text § 2190 (3d Ed. 1957). In the absence of a controlling statute, however, it is difficult to perceive any convincing reason why wages from similar jobs should be aggregated when those from dissimilar jobs are not. A disabled employee, accustomed to full earnings, is no less destitute because he happened to be earning his living in unrelated employments. As to the employer in whose employment the worker was injured, it is *he* who pays the compensation—not "the industry"; and the other wages which the injured employee was earning in a similar job are no more "insured" (or taken into account in reserves, if employer is a self-insurer) than those earned in dissimilar employment.

Statutory provisions fixing the wage basis of an injured employee entitled to compensation vary widely in the jurisdictions. Some states, including New York and Texas, provide for aggregation of earnings from concurrent *related* or *similar* employments. Four states — California, Maine, Massachusetts and Pennsylvania — require that wages from *all* employments be combined. The problem of the injured part-time worker has also been solved by reckoning his wages "as earned while working full time." *De Asis v. Fram Corp.*, 78 R.I. 249, 81 A. 2d 280. Many states, like North Carolina, restrict the wage base to the employment in which the injury occurred. Of these states, however, only five — Arkansas, Michigan, New Mexico, South Carolina and Virginia — also have the equivalent of our method (4), the "exceptional reasons" provision. Our research reveals that of these five states, only Michigan and South Carolina have considered this precise question.

In *Buehler v. University of Michigan*, 277 Mich. 648, 270 N.W. 171, plaintiff, a cleaning woman, was employed by a private sorority house and by the University of Michigan. She was injured while working in one of the University's buildings. The Michigan Department of Labor and Industry awarded compensation based upon her total earnings in both employments. The Supreme Court reversed, saying:

> "We have nothing to do with the policy of the law. That is a matter for the Legislature. But, under the facts in this case, *plaintiff was not employed by one of these employers for the benefit of the others.* Her employment by each of her employers was separate and distinct from her employment by the others and, under the law, the university may not be held liable for compensation computed on the basis of what plaintiff earned when not employed by the university, and the insurer may not be held liable for compensation based upon earnings by the

plaintiff while not on the pay roll of the insured." *Id.* at 651, 270 N.W. at 172. (Italics ours.)

The facts in the case at bar are indistinguishable from those in *McCummings v. Anderson Theatre Co.*, 225 S.C. 187, 81 S.E. 2d 348. The opinion in *Anderson* quotes South Carolina's Code of Laws § 72-4 (1952), which appears to be identical with our G.S. 97-2(5). In *McCummings*, plaintiff regularly earned $55.00-$60.00 a week as a brickmason. He was injured while engaged in his part-time job of relief-projectionist and carpenter at $6.00 per week for defendant Theatre Company. The Commission held that it would be unfair to plaintiff to compute his wage basis at $6.00, and the Supreme Court of South Carolina upheld the resulting award based on his combined wages, $61.00 per week. In doing so, however, the court said:

> "(W)e find no error . . . but such is not to be considered as a precedent for the purpose of computing an employee's average weekly wages within the contemplation of the . . . Act.
> * * *
> "Inasmuch as . . . no other method . . . was raised or discussed either in the briefs or in oral argument, we prefer not to pass upon any other method of doing so until properly before this Court and fully argued." *Id.* at 194, 81 S.E. 2d at 350-51.

From the foregoing, it is obvious that *McCummings* is not authority for *any* method of computing average weekly wages under any circumstances. Therefore, unless as plaintiff contends, our decision in *Casey v. Board of Education, supra,* supports his position, precedent for it is lacking in the absence of an authoritative statute. In *Casey,* plaintiff was employed as a janitor or custodian of the Southside School in Durham on a 12-month basis at $18.00 per week. The statement of facts reveals that:

> " 'For eight months of this time (Casey) was in part paid by the State School Commission, the remaining four months was paid from the local funds furnished through the Board of Education, City of Durham, and in addition thereto, was paid through the Board of Education, City of Durham's special funds for extra maintenance work performed out of regular hours; that for his services as custodian he received $18.00 per week, and for his extra work, approximately 30¢ per hour.' " *Id.* at 740, 14 S.E. 2d at 853.

The State School Commission never paid for any repair or maintenance work. On the night of November 29, 1939, school officials "properly requested" Casey and another employee, Melvin, to do

some painting and maintenance work in a room at the Durham Junior High School. On that night after plaintiff and other employees had attended a custodian's school, he and Melvin went to the Junior High School, where he was injured. The Commission found that plaintiff was an employee of the Board of Education of the City of Durham at the time of his injury and that he was not working for, or being paid by, the State School Commission. In determining his average weekly wages to be $18.00 a week, the Commission found:

> " 'That for exceptional reasons it would be unfair to the employee to take his earnings for the extra work he was doing at the time of his injury to establish his average weekly wage, and, it is, therefore, necessary to use his full earnings to establish a wage that will most nearly approximate his earnings if he were not injured.' " *Id.* at 741, 14 S.E. 2d at 854.

The Superior Court sustained the award, and the City Board of Education and its carrier appealed.

An examination of the record in *Casey* reveals that, before the Commission, the only question debated was which "employer" was liable. Whether the Commission employed the proper method in computing plaintiff's average weekly wages was a question not raised by the assignments of error, nor did appellants contest the amount of the award. Their only contention was that the State School Commission — not they — should pay the compensation.

It appears to us that Casey was not actually working in two different employments. As janitor-custodian of Southside School, he had the same job and the same duties twelve months a year. As an incident of this employment, he was expected to do maintenance work at any school in the City of Durham. For this work the City Board paid him at 30¢ per hour. For eight months, therefore, he was paid by two public agencies; for four months, by only one. All his work, however, was actually done for the Durham Board of Education, which, in turn, was benefiting from an allocation of State funds. *Casey*, on its facts, is not authority for the proposition that earnings from two distinct employments, similar or dissimilar, may be combined in computing the basis for compensation payments.

In 99 C.J.S., Workmen's Compensation § 294(e) (1958), *Casey* is cited in support of the following rule:

> "Where an employee serves in a dual capacity under one contract of hire, his earnings for purposes of compensation are the amounts received for work in both capacities, not merely that received for the work during the performance of which he

was injured; and it is immaterial that his pay for his services in each of the two capacities was at different rates."

In the West Digest System, *Casey* is listed under the heading Workmen's Compensation, Key No. 824 — "Basis for Determination of Amount (of compensation) — Overtime."

G.S. 97-2(5) contains no *specific* provision which would allow wages from any two employments to be aggregated in fixing the wage base for compensation. Plaintiff contends, however, that such authority is implied in method (4), since "the amount which the injured employee would be earning were it not for the injury" necessarily includes earnings from all sources if the employee had more than one job.

It is frequently said that the Workmen's Compensation Act must be liberally construed to accomplish the humane purpose for which it was passed, *i.e.*, compensation for injured employees. The purpose of the Act, however, is not only to provide a swift and certain remedy to an injured workman, but also to insure a limited and determinate liability for employers. *Quinn v. Pate*, 124 Vt. 121, 197 A. 2d 795. In any event, this Court may not legislate under the guise of construing a statute liberally. *Hardy v. Small*, 246 N.C. 581, 99 S.E. 2d 862; *Guest v. Iron & Metal Co.*, 241 N.C. 448, 85 S.E. 2d 596. Unusually severe or totally disabling injuries are not the *exceptional reasons* contemplated by method (4). See *Mion v. Marble & Tile Co., Inc.*, 217 N.C. 743, 9 S.E. 2d 501; *Early v. Basnight & Co.*, 214 N.C. 103, 198 S.E. 577; *Munford v. Construction Co.*, 203 N.C. 247, 165 S.E. 696.

It seems reasonable to us that the Legislature, having placed the economic loss caused by a workman's injury upon the employer for whom he was working at the time of the injury, would also relate the amount of that loss to the average weekly wages which that employer was paying the employee. Plaintiff, of course, will greatly benefit if his wages from both jobs are combined; but, if this is done, Cab Company—and its carrier, which has not received a commensurate premium—will be required to pay him a higher weekly compensation benefit than Cab Company ever paid him in wages. Whether an employer pays this benefit directly from accumulated reserves, or indirectly in the form of higher premiums, to combine plaintiff's wages from his two employments would not be fair to the employer. Method (4), "while it prescribes no precise method for computing 'average weekly wages,' sets up a standard to which results fair and just to both parties must be related." *Liles v. Electric Co.*, 244 N.C. 653, 658, 94 S.E. 2d 790, 794.

After having specifically declared, in the usual situations to which method (1) is applicable, that an injured employee's average

weekly wages *shall be* the wages he was earning in the employment in which he was injured, had the Legislature intended to authorize the Commission in the exceptional cases to combine those wages with the wages from *any* concurrent employment, we think it would have been equally specific. As was said in *De Asis v. Fram Corp., supra* at 253, 81 A. 2d at 282: "If that radical and important change were intended, it is not likely that the legislature would have left such intent solely to a questionable inference."

The intent of the Legislature that average weekly wages determined by method (4) be also related to the employment in which the employee was injured is further evidenced, we believe, by method (5) which relates only to a volunteer fireman injured "under compensable circumstances." This method requires that the compensation of a volunteer fireman be based upon the average weekly wage he was earning "in the employment wherein he principally earned his livelihood." Clearly, the Legislature thought that statutory authority in addition to that contained in method (4) was necessary for the Commission to vary the rule of method (1). Except for method (5), no wage-computation provision of the Act allows a consideration of any earnings except those earned in the employment in which the employee was injured. Vermont has a provision with reference to volunteer firemen identical with ours. In deciding that a claimant, in. the absence of special statutory authority, was not entitled to have his earnings from two employments combined in computing his average weekly wages, the Vermont court held this section to be strong evidence of the legislative intent not to allow aggregation. *Quinn v. Pate, supra.*

It is also noted that, even in making the exception for volunteer firemen, the North Carolina Legislature did not permit a *combination* of wages, but adopted as its basis the wages of his principal employment. Had plaintiff here been injured while serving as a volunteer fireman, instead of while driving a taxi, his compensation would have been based on his average weekly wages from National.

It is true, as plaintiff points out, that G.S. 97-2(9) is drawn so as to give the employer the benefit of wages which plaintiff, after his injury, is able to earn from any other source. See *Branham v. Pond Co.,* 223 N.C. 233, 236-37, 25 S.E. 2d 865, 868. Thus, if plaintiff, while regularly employed as a bookkeeper, had been injured as a part-time construction worker to the extent that he was permanently unable to perform manual labor, his part-time employer might well escape all liability for compensation if plaintiff were still able to earn his regular bookkeeping wages. And this, even though the part-time employer's premiums had been computed on a payroll which included plaintiff's wages. The employer and his car-

rier thus *benefit* from other wages plaintiff is still able to earn, but escape liability for other wages he is no longer able to earn. (For New York's solution to this problem see *Branfon v. Beacon Theater Corp.,* 300 N.Y. 111, 89 N.E. 2d 617.) Notwithstanding this argument may appeal to our sense of justice, any modification of G.S. 95-2(5) must be made by the Legislature.

We hold that, in determining plaintiff's average weekly wage, the Commission had no authority to combine his earnings from the employment in which he was injured with those from any other employment. Its finding that his average weekly wage was $94.45 was based upon a misapprehension of the law and cannot be sustained.

This case brings into sharp focus not only the plight of plaintiff Barnhardt, but the potential plight of all workers who are concurrently engaged in more than one employment. So many workers are now, from economic necessity, "holding two jobs at once" that these quoted words were included among the definitions of *moonlighting* in Webster's Third New International Dictionary (1961). It is tragic indeed that plaintiff should be thus victimized by his diligence and his ambition to provide for his own — particularly since, in our society, voluntary idleness is frequently compensated. Only the Legislature, however, can remedy this condition. Smith, J., speaking for the Supreme Court of Vermont in a similar case, epitomized our predicament:

> "A worker injured in one such employment, but which injury prevents him from working in his other employment as well, may suffer financial hardship by reason of the fact that the compensation he can receive must be based only upon his wages from the employment in which he received the injury.
>
> "But Courts are limited to the interpretation of statutes to effect the purpose expressed by the Legislature which enacted them. If a statute seems unfair or unjust the remedy must be sought in a legislative change or modification. It cannot be furnished by judicial action in the guise of interpretation." *Quinn v. Pate, supra* at 127, 197 A. 2d at 799.

This disposition of the case necessitates a denial of plaintiff's motion, made under G.S. 97-88, that defendant carrier be required to pay a reasonable fee to plaintiff's attorney as a part of the costs. "G.S. 97-88 does not apply when as here this Court finds error in the Commission's decision in respect of the sole controversy presented by this appeal." *Liles v. Electric Co., supra* at 661, 94 S.E. 2d at 797.

The judgment of the Superior Court overruling defendants' exceptions to the award of the Full Commission is vacated, and this

cause is remanded to the Superior Court to the end that it enter a judgment returning the case to the Industrial Commission for the entry of an award to plaintiff based upon an average weekly wage of $26.90.

Error and remanded.