JAMES B. HOLLOWAY, PLAINTIFF-APPELLEE v. T. A. MEBANE, INC., AND U.S.F.&G. COMPANY, DEFENDANTS-APPELLANTS

No. 9210IC466

(Filed 20 July 1993)

**Master and Servant § 71.1 (NCI3d)— workers' compensation— subcontractor for several employers—average weekly wage**

   Where plaintiff, an independent contractor who performed work as a subcontractor for other contractors as well as for defendant employer, was injured while working as a subcontractor for defendant, the Industrial Commission properly calculated plaintiff's average weekly wage on the basis of his total net income from his subcontracting business for the two previous years rather than on the basis of his earnings from work only for defendant. N.C.G.S. § 97-2(5).

**Am. Jur 2d, Workers' Compensation § 423.**

   Appeal by defendants from Opinion and Order of the Full Commission of the North Carolina Industrial Commission entered 20 March 1992 by Deputy Commissioner Lawrence B. Shuping, Jr. Heard in the Court of Appeals 14 April 1993.

   *Gabriel Berry & Weston, by M. Douglas Berry, for plaintiff-appellee.*

   *Adams Kleemeier Hagan Hannah & Fouts, by David A. Senter and Stephen A. Mayo, for defendants-appellants.*

## HOLLOWAY v. T. A. MEBANE, INC.

[111 N.C. App. 194 (1993)]

LEWIS, Judge.

Plaintiff, an independent contractor, was injured while working as a subcontractor for defendant T.A. Mebane, Inc. ("Mebane") on 8 February 1989, and was out of work until 24 April 1989. Neither Mebane nor its carrier, defendant U.S.F.& G. Co. ("USF&G"), contested the applicability of workers' compensation coverage, and on 19 April 1989 defendants entered into a Form 21 Agreement awarding disability benefits to plaintiff. Under the facts of this case, the plaintiff was covered by defendants' policy. On 14 November 1990 Deputy Commissioner Jan N. Pittman set aside the Form 21 Agreement due to mutual mistake, determined plaintiff's average weekly wage and awarded temporary total disability benefits. On 20 March 1992 the Full Commission entered an award adjusting the average weekly wage calculated by Commissioner Pittman. The sole issue on appeal is the calculation of plaintiff's average weekly wage.

As an independent contractor plaintiff normally works on several different jobs within a short time period. Plaintiff's main area of work is "interlocking weather stripping" and hanging doors. According to plaintiff, he is the only person in the area performing such work, and he works constantly from one job to the next. Plaintiff has worked for Mebane periodically over the last four or five years, and has been paid on a job-by-job basis. Plaintiff asserts his earnings from work for Mebane constituted about 10% of his 1988 gross earnings.

Commissioner Pittman calculated the average weekly wage under N.C.G.S. § 97-2(5) based only on plaintiff's earnings from employment with Mebane, and did not consider plaintiff's earnings from work performed for other contractors. Commissioner Pittman divided the total amount plaintiff had earned from Mebane for the 52-week period prior to this injury by thirteen, the number of weeks plaintiff had actually worked for Mebane during that period. This resulted in an average weekly wage of $205.76. The Full Commission, on the other hand, based its determination of the average weekly wage upon the average of plaintiff's net income from his sub-contracting business for the years 1988 and 1989, which resulted in a much higher average weekly wage of $480.45.

---

When reviewing a decision of the Full Commission, this Court must determine whether there is competent evidence to support

the Commission's findings of fact, and whether the findings of fact support the conclusions of law. *Hendrix v. Linn-Corriher Corp.*, 317 N.C. 179, 186, 345 S.E.2d 374, 379 (1986). In its Opinion and Order, the Full Commission set forth the following in its Findings of Fact:

> 4. The method of determining plaintiff's appropriate average weekly wage which most nearly approximates the amount he would be earning were it not for his injury is to do so on the basis of an average of his net income from his sub-contracting business for the years 1988 and 1989, which is shown on his Schedule C tax returns for these same years, involves the two years in which he did work during the year prior to his injury and results in an average weekly wage of $480.45 ($26,127 earnings for 1988 plus $23,977 earnings for 1989 divided by 2, divided by 365 times 7).

This finding is actually a legal conclusion based upon the Commission's interpretation of N.C.G.S. § 97-2(5). We note that "[a]lthough the Commission's findings are conclusive on appeal if supported by competent evidence, its legal conclusions are reviewable by our appellate courts." *Grant v. Burlington Indus., Inc.*, 77 N.C. App. 241, 247, 335 S.E.2d 327, 332 (1985).

N.C.G.S. § 97-2(5) sets forth several methods for determining average weekly wage. The first method set forth in the statute states that:

> "Average weekly wages" shall mean the earnings of the injured employee in the employment in which he was working at the time of the injury during the period of 52 weeks immediately preceding the date of the injury, . . ., divided by 52; but if the injured employee lost more than seven consecutive calendar days at one or more times during such period, . . ., then the earnings for the remainder of such 52 weeks shall be divided by the number of weeks remaining after the time so lost has been deducted.

The second method states:

> Where the employment prior to the injury extended over a period of less than 52 weeks, the method of dividing the earnings during that period by the number of weeks and parts thereof during which the employee earned wages shall be fol-

lowed; provided, results fair and just to both parties will be thereby obtained.

According to the third method:

Where, by reason of a shortness of time during which the employee has been in the employment of his employer or the casual nature or terms of his employment, it is impractical to compute the average weekly wages as above defined, regard shall be had to the average weekly amount which during the 52 weeks previous to the injury was being earned by a person of the same grade and character employed in the same class of employment in the same locality or community.

Finally, the fourth method states:

But where for exceptional reasons the foregoing would be unfair, either to the employer or employee, such other method of computing average weekly wages may be resorted to as will most nearly approximate the amount which the injured employee would be earning were it not for the injury.

N.C.G.S. § 97-2(5) (1991). Both the Deputy Commissioner and the Full Commission found that computation based on the first two methods would be unfair and unjust, and that it would not be possible at all under the third method. Therefore, because of the nature of plaintiff's employment as an independent contractor, only the fourth method, the catch-all method, is applicable.

Defendants contend the Full Commission erred in considering plaintiff's earnings from employers other than Mebane. Defendants argue that each method listed in the statute is subject to the limitation in the first sentence, thereby precluding consideration of employment other than that in which the employee was working at the time of the injury. Plaintiff, on the other hand, argues that in this situation it was proper and fair to consider plaintiff's net income over the most recent years to approximate his average weekly wage.

A recent decision of this Court applying the fourth method supports plaintiff's position that the Commission properly considered plaintiff's average income over the previous few years instead of limiting itself to earnings from employment with Mebane. *Postell v. B & D Construction Co.*, 105 N.C. App. 1, 411 S.E.2d 413, *disc. rev. denied*, 331 N.C. 286, 417 S.E.2d 253 (1992), also involved an

HOLLOWAY v. T. A. MEBANE, INC.

[111 N.C. App. 194 (1993)]

independent contractor who had worked for the defendant employer only a short time before his injury. Applying the fourth method, the *Postell* Court did not restrict itself to consideration of wages earned in the employment in which plaintiff was injured, but instead agreed with the Commission to uphold an average weekly wage computation based upon actual earnings recorded during the years 1986, 1987, and 1988. The Court focused on plaintiff's earning capacity, and found its result to be fair and equitable since it "appear[ed] to best reflect plaintiff's actual earnings." *Id*. at 7, 411 S.E.2d at 416. Obviously, the Court did not find its calculation under the fourth method restricted by the first sentence of section 97-2(5).

In interpreting section 97-2(5), our courts have generally sought to achieve a fair and equitable result. In *Derebery v. Pitt County Fire Marshall*, 318 N.C. 192, 347 S.E.2d 814 (1986), the Court interpreted another method listed under section 97-2(5) to permit the combination of a volunteer fireman's wages from other employment. Significantly, the Court commented on the purpose of the average weekly wage basis for compensation, which is to "measure . . . the injured employee's earning capacity." *Id*. at 197, 347 S.E.2d at 817. Furthermore, Professor Larson, in discussing the fourth method of calculation, stated that:

[the statute's] language could hardly be more clear: the test is . what the claimant would have earned if he had not been injured. . . . The statute does not refer to what he would have earned 'in the same employment.'

Indeed, the whole point of having a catch-all clause is to prevent unfairness in just such situations as this. . . . fairness means approximating what the employee would have made if not injured.

Larson, *Workmen's Compensation*, § 60.31(c) (1993).

The cases relied upon by defendants are distinguishable from the case at hand. *Barnhardt v. Yellow Cab Co.*, 266 N.C. 419, 146 S.E.2d 479 (1966), *overruled in part by Derebery v. Pitt County Fire Marshall*, 318 N.C. 192, 198, 347 S.E.2d 814, 818 (1986), involved the determination of the average weekly wage in a concurrent employment situation, in which the employee held a full-time and a part-time job. 266 N.C. at 423, 146 S.E.2d at 482. That Court, calculating the average weekly wage under the fourth method,

**HOLLOWAY v. T. A. MEBANE, INC.**

[111 N.C. App. 194 (1993)]

limited itself to consideration of earnings from the employment in which the employee was injured. *Id.* at 429, 146 S.E.2d at 486. *See also Joyner v. A.J. Carey Oil Co.*, 266 N.C. 519, 146 S.E.2d 447 (1966) (under second method of § 97-2(5), same result in concurrent employment situation involving full and part-time jobs).

Discussing *Barnhardt*, the *Derebery* Court noted that the full-time employer in *Barnhardt* had no reason to know plaintiff held another job, thus rendering it unfair to the employer to combine wages from other employment. *Derebery*, 318 N.C. at 198, 347 S.E.2d at 818. In the case at hand, however, defendants must have known plaintiff worked for other employers because of the nature of plaintiff's work as an independent contractor. Moreover, this is not a case of concurrent employment, where the employee may hold several different permanent or long-term jobs at once, drawing separate wages or salaries from each employer. As an independent contractor, plaintiff works for short periods of time for each employer, moving from one job to the next. Basing plaintiff's average weekly wage upon work for one employer would be inherently unfair to plaintiff.

Although fairness to the employer is also a consideration, we note that our courts have stated that the premium paid by a particular employer towards worker's compensation insurance "is not in any sense determinative as to the 'fair and just' result as contemplated under G.S. 97-2(5)." *Mabry v. Bowers Implement Co.*, 48 N.C. App. 139, 144-45, 269 S.E.2d 165, 167-68 (1980). Moreover, Professor Larson explains that

> fairness to the employee and fairness to the employer-carrier are not symmetrical, and cannot be judged by the same standards. . . . The rule operates impartially in both directions. Today this employer-carrier may be saddled with a slight extra cost; tomorrow the positions may be reversed, and the employer-carrier will be completely relieved of the cost of an injury to one of its employees . . . when it happens to be the other employment in which the injury occurs. This is the essence of the concept of spreading the risk in a system like workmen's compensation.

Larson, § 60.31(c).

We hold the Commission correctly determined plaintiff's earning capacity as an independent contractor under the fourth method

listed in section 97-2(5) by averaging plaintiff's net income for the years 1988 and 1989. This interpretation most accurately reflects plaintiff's earning capacity and the amount he "would be earning were it not for the injury." § 97-2(5). Because we are affirming the Commission's decision on this issue, we find it unnecessary to address defendants' other contention which concerned the calculations by the Deputy Commissioner.

Affirmed.

Chief Judge ARNOLD and Judge McCRODDEN concur.