BRENDA McANINCH, EMPLOYEE-PLAINTIFF/APPELLEE v. BUNCOMBE COUNTY SCHOOLS, SELF-INSURED, (EDUCATOR BENEFITS SERVICES, INC., SERVICING AGENT), EMPLOYER-DEFENDANT/APPELLANT

No. COA95-508

(Filed 18 June 1996)

**Workers' Compensation § 263 (NCI4th)— public school employee—method of calculating average weekly wages**

A public school employee's "average weekly wages" pursuant to N.C.G.S. § 97-2(5) should be calculated by aggregating her wages from defendant employer with her wages earned from other employment during the summer vacation period, and dividing that sum by 52.

**Am Jur 2d, Workers' Compensation §§ 418-430.**

Appeal by defendant from an opinion and award entered 13 March 1995 by the North Carolina Industrial Commission. Heard in the Court of Appeals 20 February 1996.

Plaintiff, Brenda R. McAninch, worked for defendant as a cafeteria worker for approximately eight years until 16 August 1990, when she suffered a compensable injury in the course of her employment. Plaintiff remains totally disabled as a result of this injury. Plaintiff's position as a cafeteria worker existed only while school was in regular session and plaintiff therefore worked only forty two weeks per year for defendant. Because her position did not employ her for the entire year, plaintiff had a choice of two different payment options. Plaintiff chose the first under which she received an average of $163.37 per week during the forty-two weeks that she worked, and then received no wages from defendant during the remaining ten weeks of the year. The second unchosen option would have allowed plaintiff to defer a portion of her earnings so that she would have received equal payment installments throughout the entire year.

On 3 October 1990, the parties entered into a Form 21 agreement for the payment of compensation at a rate of $108.91 per week based upon her average weekly wage of $163.37. This agreement provided for plaintiff to be compensated weekly at this rate so long as her disability continued. The Form 21 agreement was approved by the Industrial Commission on 16 October 1990. This rate of compensation reflected in the Form 21 agreement did not reflect any wages plaintiff

earned from other employment undertaken during the ten week summer vacation period that she was not working for defendant. On this issue, plaintiff testified that she earned an average of $150.00 per week performing painting, housekeeping and babysitting chores.

In light of plaintiff's employment period and her choice of compensation plans, defendant refused to pay plaintiff during the two month summer vacation period. In response, plaintiff filed a Form 33 request for a hearing, and the matter was heard before Deputy Commissioner Morgan S. Chapman on 19 May 1994. The Deputy Commissioner determined that plaintiff was entitled to compensation during the summer months, but that plaintiff's compensation rate must be adjusted so that her average weekly wage would reflect her annual salary spread out over fifty-two weeks instead of forty-two. Plaintiff appealed to the Full Commission, and the Full Commission reinstated plaintiff's original compensation rate as stated in the Form 21 agreement and also ordered that plaintiff be compensated at that rate during the summer months as well.

Defendant appeals.

*Mraz & Dungan, by John A. Mraz, for plaintiff-appellee.*

*Hedrick, Eatman, Gardner & Kincheloe, by Scott M. Stevenson, Allen C. Smith and Jeffrey A. Doyle, for defendant-appellant.*

EAGLES, Judge.

Defendant first argues that the Full Commission erred in calculating plaintiff's average weekly wages pursuant to G.S. 97-2(5). We agree. In this case we face the novel issue of whether a public school employee's "average weekly wages" should be calculated with or without regard to the ten week summer vacation period.

G.S. 97-2(5) defines average weekly wages and provides in pertinent part that:

[1] "Average weekly wages" shall mean the earnings of the injured employee in the employment in which he was working at the time of the injury during the period of 52 weeks immediately preceding the date of the injury, including the subsistence allowance paid to veteran trainees by the United States government, provided the amount of said allowance shall be reported monthly by said trainee to his employer, divided by 52; [2] but if the injured employee lost more than seven consecutive calendar

days at one or more times during such period, although not in the same week, then the earnings for the remainder of such 52 weeks shall be divided by the number of weeks remaining after the time so lost has been deducted. [3] *Where the employment prior to the injury extended over a period of less than 52 weeks, the method of dividing the earnings during that period by the number of weeks and parts thereof during which the employee earned wages shall be followed; provided, results fair and just to both parties will be thereby obtained.* [4] Where, by reason of a shortness of time during which the employee has been in the employment of his employer or the casual nature or terms of his employment, it is impractical to compute the average weekly wages as above defined, regard shall be had to the average weekly amount which during the 52 weeks previous to the injury was being earned by a person of the same grade and character employed in the same class of employment in the same locality or community.

[5] *But where for exceptional reasons the foregoing would be unfair, either to the employer or employee, such other method of computing average weekly wages may be resorted to as will most nearly approximate the amount which the injured employee would be earning were it not for the injury.*

G.S. 97-2(5) (1995) (emphasis added). As the bracketed numerals denote, this statute in essence provides a hierarchy of five general methods by which an injured employee's average weekly wages may be computed. We defer to the Commission's findings and conclusions, unless a finding of fact is unsupported by competent evidence or a conclusion of law is "predicated on an erroneous construction of the statute." *Liles v. Electric Co.*, 244 N.C. 653, 660, 94 S.E.2d 790, 796 (1956).

"The primary rule of statutory construction is that the intent of the legislature controls the interpretation of a statute." *Tellado v. Ti-Caro Corp.*, 119 N.C. App. 529, 533, 459 S.E.2d 27, 30 (1995). In determining legislative intent, we "should consider the language of the statute, the spirit of the act, and what the act seeks to accomplish." *Id.* The dominant intent of G.S. 97-2(5) "is that results fair and just to both parties be obtained." *Liles*, 244 N.C. at 660, 94 S.E.2d at 795-96.

In interpreting G.S. 97-2(5), defendants argue that our analysis is controlled by *Joyner v. A.J. Carey Oil Co.*, 266 N.C. 519, 146 S.E.2d 447 (1966). In *Joyner*, the plaintiff sustained an injury by accident

while working as a part-time truck driver for defendant oil company. Plaintiff's position as a part-time truck driver was inherently intermittent; some weeks the job would provide steady work for plaintiff and some weeks the job was nonexistent. The Industrial Commission calculated plaintiff's average weekly wages based on the third method found in G.S. 97-2(5) which provides:

> Where the employment prior to the injury extended over a period of less than fifty-two weeks, the method of dividing the earnings during that period by the number of weeks and parts thereof during which the employee earned wages shall be followed; provided, results fair and just to both parties will be thereby obtained.

The Supreme Court reversed, however, upon determining that the employment as a part-time truck driver was "in effect, one continuous employment for which we have a complete record during the 52 weeks preceding plaintiff's injury." *Joyner*, 266 N.C. at 522, 146 S.E.2d at 449-50. The Court held that fairness to the employer requires that consideration be given to "both peak and slack periods." *Id.*, 146 S.E.2d at 450.

Defendant argues that this holding is dispositive to our case as well. We are not persuaded, however, because we conclude that *Joyner* is factually distinct and must be distinguished. The *Joyner* Court's holding is entirely dependent upon its determination that plaintiff's employment could not be considered one with a "period of less that 52 weeks." G.S. 97-2(5). That plaintiff in *Joyner* may not have worked at all one week and then may have worked long hours the next bears no resemblance to the facts of our case. The dispositive distinction is that the plaintiff in *Joyner* was to be available to work during any week that his employer required his services, while plaintiff here has a predetermined period of less than 52 weeks that she is to be available, and a predetermined period where the job is guaranteed to be nonexistent.

No legal fiction can be created or payment plan devised that can alter the essential fact that plaintiff's employment here extends for a period of less than 52 weeks. That plaintiff could have elected to be compensated over twelve months rather than over the ten months that she actually worked is irrelevant because the twelve month plan is merely an agreement to defer the receipt of a part of her 42 weeks of compensation. To have a period of employment within the meaning of G.S. 97-2(5), not only must the employer have a continuing obliga-

## McANINCH v. BUNCOMBE COUNTY SCHOOLS

[122 N.C. App. 679 (1996)]

tion to compensate the employee, but the employee must have a commensurate continuing obligation of performance to the employer. No such reciprocal obligation exists here during the ten week summer vacation period. Accordingly, we must first calculate plaintiff's average weekly wages pursuant to the third method in G.S. 97-2(5).

Performing this calculation pursuant to G.S. 97-2(5) yields an average weekly wage of $163.37. Having performed the prescribed statutory calculation, the only remaining inquiry is whether the results obtained are "fair and just to both parties." G.S. 97-2(5). If the results obtained are not, the fifth prescribed method of calculation must be used in order to achieve a more equitable result. *Wallace v. Music Shop*, 11 N.C. App. 328, 331, 181 S.E.2d 237, 239 (1971).

We conclude that the resulting average weekly wage of $163.37 obtained pursuant to the third calculation method is not fair and just to defendant. G.S. 97-2(5). Specifically, we reach this conclusion upon recognizing that plaintiff could receive a windfall if she were compensated at a rate that reflected wages greater than those she actually earned from her employment. The purpose of our Workers' Compensation Act is not to put the employee in a better position than she was in prior to the injury. Accordingly, we must now look to the fifth method of calculation which states:

But where for exceptional reasons the foregoing would be unfair, either to the employer or employee, such other method of computing average weekly wages may be resorted to as will most nearly approximate the amount which the injured employee would be earning were it not for the injury.

G.S. 97-2(5). As we have indicated, this method may only be utilized subsequent to a finding that the third method was applicable but would fail to produce results fair and just to both parties. *Wallace*, 11 N.C. App. at 331, 181 S.E.2d at 239.

Applying this fifth method of calculation, we conclude that the Commission erred in calculating plaintiff's average weekly wages. The language of the fifth calculation method creates no specific mathematical formula to be applied; instead it directs that the average weekly wage calculated must "most nearly approximate the amount which the injured employee would be earning were it not for the injury." G.S. 97-2(5). This calculation necessarily includes wages earned in employment other than that in which the employee was injured. *Holloway v. T.A. Mebane, Inc.*, 111 N.C. App. 194, 198, 431

S.E.2d 882, 884 (1993). As this court recognized in *Holloway*, the statutory language setting out the fifth calculation method

> could hardly be more clear: [T]he test is what the claimant would have earned if he had not been injured. . . . The statute does not refer to what he would have earned "in the same employment."

> Indeed, the whole point of having a catch-all clause is to prevent unfairness in just such situations as this. . . . [F]airness means approximating what the employee would have made if not injured.

*Id.* (quoting *Larson, Workmen's Compensation*, 60.31(c) (1993)). Consequently, we remand to the Industrial Commission for a determination of plaintiff's wages earned during the ten week summer vacation period. Plaintiff's average weekly wage must then be calculated by aggregating plaintiff's wages from defendant-employer with her wages earned during the ten week summer vacation period and dividing that sum by 52.

This result is the most "fair and equitable" to both parties and most fulfills the goal "of the average weekly wage basis for compensation, which is to 'measure . . . the injured employee's earning capacity.'" *Holloway*, 111 N.C. App. at 198, 431 S.E.2d at 884 (quoting *Derebery v. Pitt County Fire Marshall*, 318 N.C. 192, 197, 347 S.E.2d 814, 817 (1986)). Under the fifth calculation method

> fairness to the employee and fairness to the employer-carrier are not symmetrical, and cannot be judged by the same standards. . . . The rule operates impartially in both directions. Today this employer-carrier may be saddled with a slight extra cost; tomorrow the positions may be reversed . . . .

*Holloway*, 111 N.C. App. at 199, 431 S.E.2d at 885 (quoting *Larson, Workmen's Compensation*, 60.31(c) (1993)).

We note that defendants call to our attention two cases from other jurisdictions interpreting their workers' compensation laws as defendant contends we should interpret ours. *Herbst's Case*, 416 Mass. 648, 624 N.E.2d 564 (1993); *Duran v. Albuquerque Public Schools*, 105 N.M. 297, 731 P.2d 1341 (1986), *cert. denied*, 105 N.M. 290, 731 P.2d 1334 (1987). Those cases are not persuasive under the language of our current statute. The different results reached in those cases reflect the differences between our North Carolina workers' compensation statute and the respective workers' compensation

statutes of those two states. We need not address defendants' remaining assignments of error.

Reversed and remanded.

Judges JOHN and WALKER concur.