STANLEY BARRETT, Employee, Plaintiff v. ALL PAYMENT SERVICES, INC., Employer, and NORTH CAROLINA INSURANCE GUARANTY ASSOCIATION, Carrier, Defendants

No. COA09-541

(Filed 22 December 2009)

**1. Workers' Compensation— temporary partial disability— ability to earn wages—post-injury average weekly wage**

The Industrial Commission erred in a workers' compensation case by awarding plaintiff employee temporary partial disability compensation and the case is remanded because the Commission failed to make findings about plaintiff's ability to earn wages in other fields and plaintiff's post-injury average weekly wages.

**2. Workers' Compensation— total disability—sufficiency of evidence**

The Industrial Commission did not err in a workers' compensation case by awarding plaintiff employee total disability beginning two weeks prior to 30 August 2001 and continuing until further order of the Commission based on finding 32. Although defendants contend the finding was contradicted by competent evidence of record, the Court of Appeals' duty goes no further than determining whether the record contains any evidence tending to support the finding, and finding 32 was supported by unchallenged findings 1, 28, and 29.

**3. Workers' Compensation— average weekly wage—improper use of wages from other jobs**

Although the Industrial Commission did not err in a workers' compensation case by using method five under N.C.G.S. § 97-2(5) to calculate plaintiff employee's average weekly wage, it misapplied the method by including wages from jobs other than the one on which he was injured. The case was remanded for a recalculation of the average weekly wage.

Appeal by defendants and cross-appeal by employee from an opinion and award entered 26 November 2008 by the North Carolina Industrial Commission. Heard in the Court of Appeals 27 October 2009.

BARRETT v. ALL PAYMENT SERVS., INC.

[201 N.C. App. 522 (2009)]

*Law Office of G. Lee Martin, P.A., by G. Lee Martin, for employee-plaintiff.*

*Hedrick, Gardner, Kincheloe & Garofalo, L.L.P., by Jerry L. Wilkins, Jr., and Dewana F. Looper, for defendants.*

BRYANT, Judge.

On 25 October 1993, employee-plaintiff Stanley Barrett sustained an admittedly compensable back injury at work. Defendant All Payment Services, Inc., Barrett's employer, accepted employee's claim on 3 July 2002. On 4 May 2006, employee requested the claim be assigned for hearing. Following a hearing, Deputy Commissioner Wanda Blanche Taylor issued an opinion and award on 21 March 2007. Both defendants and employee appealed to the Full Commission which issued an opinion and award on 26 November 2008. Both parties now appeal from the Full Commission's opinion and award. As discussed below, we affirm in part, reverse in part, and remand.

*Facts*

Employee has worked as a professional stuntman for more than three decades. In October 1993, he injured his back while performing a car jump stunt on the set of a television series called "Bandit, Bandit". Employee felt immediate back pain as his car landed from a jump at high speed. Employee sought medical attention and was diagnosed with acute lumbar pain secondary to trauma. Employee continued his stunt work for the final week of the show's production, despite instructions from his doctor that he refrain from doing so. Following the end of production, employee had continued low back and leg pain, and he was subsequently diagnosed with kidney and bladder contusions.

Between 1993 and 2001, employee continued his stunt work and received only conservative medical treatment for his back injury although his symptoms worsened. In August and September 2001, employee had two back surgeries. Following the second surgery, employee's physician opined that he had reached maximum medical improvement and assigned a 35% permanent partial impairment rating to his back.

On appeal, defendants argue that the Full Commission erred in awarding employee: (I) temporary partial disability compensation at varying rates not to exceed $442 per week for up to 300 weeks from

the date of injury, and (II) temporary total disability compensation at the rate of $442 per week beginning two months prior to 30 August 2001 and continuing until further order of the Commission. We agree in part and remand for additional findings as specified below.

Employee cross-assigns as error the Commission's use of method 5 under N.C. Gen. Stat. § 97-2(5) to calculate his average weekly wage, including the wages from jobs he worked other than the job on which he was injured. We agree in part and remand for recalculation of employee's average weekly wage.

*Standard of Review*

On appeal from an award of the Industrial Commission, our review is limited to determining whether competent evidence supports the Commission's findings of fact and whether those findings support the Commission's conclusions of law. *Adams v. AVX Corp.*, 349 N.C. 676, 681, 509 S.E.2d 411, 414 (1998), *reh'ing denied*, 350 N.C. 108, 532 S.E.2d 522 (1999); *see also Deese v. Champion Int'l Corp.*, 352 N.C. 109, 530 S.E.2d 549 (2000). We review matters of statutory interpretation of the Workers' Compensation Act de novo. *Goodson v. P.H. Glatfelter Co.*, 171 N.C. App. 596, 605, 615 S.E.2d 350, 357, *disc. review denied*, 360 N.C. 63, 623 S.E.2d 582 (2005).

*Defendants' Arguments*

*I*

**[1]** Defendants first argue that the Commission erred in awarding employee temporary partial disability compensation at varying rates not to exceed $442 per week for up to 300 weeks from the date of his injury because the Commission failed to make findings about employee's ability to earn wages in fields other than stunt work. We agree.

To support its conclusion of disability, the Commission must find the following:

(1) that plaintiff was incapable after his injury of earning the same wages he had earned before his injury in the same employment, (2) that plaintiff was incapable after his injury of earning the same wages he had earned before his injury in any other employment, and (3) that this individual's incapacity to earn was caused by plaintiff's injury.

*Hilliard v. Apex Cabinet Co.*, 305 N.C. 593, 595, 290 S.E.2d 682, 683 (1982). An employee may satisfy his burden under *Hilliard*

in one of four ways: (1) the production of medical evidence that he is physically or mentally, as a consequence of the work related [sic] injury, incapable of work in any employment; (2) the production of evidence that he is capable of some work, but that he has, after a reasonable effort on his part, been unsuccessful in his effort to obtain employment; (3) the production of evidence that he is capable of some work but that it would be futile because of preexisting conditions, i.e., age, inexperience, lack of education, to seek other employment; or (4) the production of evidence that he has obtained other employment at a wage less than that earned prior to the injury.

*Russell v. Lowes Prod. Distrib.*, 108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993) (citations omitted).

Here, defendants do not challenge any particular findings as not being supported by competent evidence. Instead, defendants contend that the Commission failed to make the required findings under *Hilliard* and *Russell* about employee's ability to earn wages in fields other than stunt work during the period between his injury in October 1993 and 300 weeks later, July 1999.

Finding 31 specifies that, following his injury in 1993, employee was only able to earn wages as a stunt man or stunt coordinator sporadically through friendship gestures rather than on the competitive market and that "the Full Commission finds as fact that [employee] was temporarily and partially disabled as a result of his injury from the date of injury until approximately two months prior to his August 30, 2001 surgery." Finding 31 makes no mention of employee's ability to find work in fields other than stunt work. Finding 32 states:

[Employee]'s lower back condition progressively worsened over time and caused him to become totally disabled from working at least two months before August 30, 2001, when he underwent surgery. The Full Commission finds as fact that [employee] remains temporarily and totally disabled from work since reaching maximum medical improvement from his 2001 surgeries on September 1, 2003. Although [employee]'s physicians released him to "semi-sedentary" and "sedentary" work, and [employee] may be capable of some work, it would be futile for [employee] to seek employment, given his advanced age, his prior work history, his pre-existing conditions, his severely debilitating back condition due [to] his current work related [sic] injury as well as non work related [sic] causes and his work related [sic]

physical restrictions. The Full Commission finds as fact, based upon the greater weight of the evidence, that [employee] became temporarily and totally disabled from working in any employment at least two months prior to August 30, 2001 and remains temporarily and totally disabled as a result of his October 25, 1993 work injury.

Thus, while the Commission made a finding of futility under the third prong of *Russell* in finding 32, this finding was related only to employee's temporary total disability which began two weeks before 30 August 2001. Neither finding 31, nor any other finding of fact, addresses employee's ability to earn wages in fields other than stunt work as required by *Hilliard* for the period between October 1993 and July 1999.

Defendants also argue that conclusions 3 and 4 are not supported because the Commission failed to make findings about employee's average weekly wage post-injury. Under N.C. Gen. Stat. § 97-30, temporary partial disability compensation is based on the difference between the employee's average weekly wage before and after the injury. *Thomason v. Fiber Indus.*, 78 N.C. App. 159, 162, 336 S.E.2d 632, 634 (1985), *disc. review denied*, 316 N.C. 202, 341 S.E.2d 573 (1986). Although conclusion 4 specifies that an employee should receive compensation based on the difference between his pre- and post-injury average weekly wage and specifies that the post-injury average weekly wage is to be "calculated using the same formula as used to calculate average weekly wage[,]" the Commission made no findings about employee's wages or earnings in the years following his injury.

We remand to the Commission for findings about employee's ability to earn wages in fields other than stunt work between his injury in October 1993 and July 1999 as required by *Hilliard* and findings about employee's post-injury average weekly wages which support its conclusions regarding employee's right to and amount of temporary partial disability compensation.

## II

**[2]** Defendants next argue that the Commission erred in awarding employee temporary total disability beginning two weeks prior to 30 August 2001 and continuing until further order of the Commission. Defendants contend that there are no findings to support the award of ongoing temporary total disability benefits after 3 September 2001. We disagree.

In proving disability, "[t]he burden is on the employee to show that he is unable to earn the same wages he had earned before the injury, either in the same employment or in other employment." *Russell*, 108 N.C. App. at 765, 425 S.E.2d at 457. Defendants argue that the Commission made no finding about employee's ability to find work outside the stunt work field following his August 2001 surgery. However, as quoted above, finding 32 addresses this issue, stating that while he might be capable of some of work "it would be futile for [employee] to seek employment, given his advanced age, his prior work history, his pre-existing conditions, his severely debilitating back condition due [to] his current work related [sic] injury as well as non work related [sic] causes and his work related [sic] physical restrictions." This conforms to the third method of proving disability discussed in *Russell* and fully supports the Commission's conclusions.

In the alternative, defendants argue that finding 32 was "clearly contradicted by the competent evidence of record," specifically by employee's testimony that he worked as a stunt coordinator on a film in 2003 and could still do some stunt coordinating "depending on the show." Defendants misstate the proper standard of review; this Court does not sift through the record, searching for evidence that might contradict the Commission's findings. Rather, our "duty goes no further than to determine whether the record contains any evidence tending to support the finding." *Anderson v. Lincoln Constr. Co.*, 265 N.C. 431, 434, 144 S.E.2d 272, 274 (1965). Unchallenged finding 1 states that employee was born in 1943 and spent more than thirty-five years working as a stunt man or coordinator, and unchallenged findings 28 and 29 state that employee's doctors felt he could undertake only sedentary work. This competent evidence fully supports finding 32. Defendants' assignment of error is overruled.

### Employee's Argument

[3] Employee argues that the Commission erred in using method five under N.C. Gen. Stat. § 97-2(5) to calculate his average weekly wage and including wages from jobs other than the job on which he was injured. We conclude that the Commission properly used method five, but hold that it misapplied this method by including wages from other employers in computing employee's average weekly wage.

We begin by noting that neither employee's cross-assignment of error nor the argument in his brief specifically mentions any finding or conclusion by the Commission. However, as employee's cross-

assignment of error and argument both focus on the Commission's use of method five under N.C.G.S. § 97-2(5) to calculate his average weekly wage, we review his argument as a challenge to conclusion 2, which states:

> 2. The Full Commission concludes that exceptional reasons exist to utilize Method five(5) of §97-2(5) of the North Carolina General Statutes to compute [employee]'s average weekly wage. [Employee]'s work was contractual in nature and he would have periods of very high earnings, followed by periods where he did not work at all. The Full Commission therefore concludes that it is fair to both parties to compute [employee]'s wages based upon his earnings over the previous year from all of his jobs. At the time of [employee]'s October 25, 1993 work injury, [employee]'s average weekly wage was $1,679.11 per week, which yields the maximum compensation rate for the year 1993 of $442.00 per week. *Larramore v. Richardson Sports Ltd. Partners*, 141 N.C. App. 250, 540 S.E.2d 768 (2000), *aff'd* 353 N.C. 520, 546 S.E.2d 87 (2001); N.C. Gen. Stat. §97-2(5).

N.C.G.S. § 97-2(5) specifies, in order of preference, four methods of calculating an employee's average weekly wage:

> "Average weekly wages" shall mean [1] the earnings of the injured employee in the employment in which he was working at the time of the injury during the period of 52 weeks immediately preceding the date of the injury, including the subsistence allowance paid to veteran trainees by the United States government, provided the amount of said allowance shall be reported monthly by said trainee to his employer, divided by 52; [2] but if the injured employee lost more than seven consecutive calendar days at one or more times during such period, although not in the same week, then the earnings for the remainder of such 52 weeks shall be divided by the number of weeks remaining after the time so lost has been deducted. [3] Where the employment prior to the injury extended over a period of fewer than 52 weeks, the method of dividing the earnings during that period by the number of weeks and parts thereof during which the employee earned wages shall be followed; provided, results fair and just to both parties will be thereby obtained. [4] Where, by reason of a shortness of time during which the employee has been in the employment of his employer or the casual nature or terms of his employment, it is impractical to compute the average weekly wages as above de-

fined, regard shall be had to the average weekly amount which during the 52 weeks previous to the injury was being earned by a person of the same grade and character employed in the same class of employment in the same locality or community.

N.C.G.S. § 97-2(5) (2009). This section then provides a fifth method: "where for exceptional reasons the foregoing would be unfair, either to the employer or employee, such other method of computing average weekly wages may be resorted to as will most nearly approximate the amount which the injured employee would be earning were it not for the injury." *Id.* Here, the Commission employed method five. Plaintiff argues that the Commission should have used method three under § 97-2(5), dividing the wages earned during employee's contract with employer by the number of weeks worked.

In unchallenged findings of fact 4, 5 and 6, the Commission noted the following. The nature of employee's stunt work meant that he had short periods of very high earnings interspersed with periods when he did not work at all. Employee received $60,000 for his six-week contract with employer. From all his work as a stunt man under various contracts with various employers, employee's earnings, less residuals, were $36,692.04 in 1992 and $97,437.88 in 1993. The Commission found that using method three would be unfair to the employer, since it "would not fairly approximate the amount [employee] would be earning were it not for the injury." Under method three, employee's average weekly wage would be $10,000.

The Supreme Court has held that method five

clearly may not be used unless there has been a finding that unjust results would occur by using the previously enumerated methods. *Wallace v. Music Shop, II, Inc.*, 11 N.C. App. 328, 181 S.E.2d 237 (1971)). Ultimately, the primary intent of this statute is that results are reached which are fair and just to both parties. *Liles v. Faulkner Neon & Elec. Co.*, 244 N.C. 653, 660, 94 S.E.2d 790, 795-96 (1956). "Ordinarily, whether such results will be obtained . . . is a question of fact; and in such case a finding of fact by the Commission controls decision." *Id.*

*McAninch v. Buncombe County Sch.*, 347 N.C. 126, 130, 489 S.E.2d 375, 378 (1997). Since methods one, two and four under § 97-2(5) could not be used, and since method three gave an unfair result, the Commission correctly turned to method five. *See Loch v. Entm't Ptnrs.*, 148 N.C. App. 106, 111-12, 557 S.E.2d 182, 186 (2001) (approv-

ing the use of method five for determining the average weekly wage of a part-time actor who worked only five days out of the preceding 52 weeks).

We next consider the Commission's inclusion of wages from all of his employers in making its calculation under method five. A long line of cases has disapproved using wages earned from an employer other than that in whose employment the injury occurred in determining average weekly wage. "When an employee who holds two separate jobs is injured in one of them, his compensation is based only upon his average weekly wages earned in the employment producing the injury." *Joyner v. A.J. Carey Oil Co.*, 266 N.C. 519, 521, 146 S.E.2d 447, 449 (1966). Further, an "employee who unfortunately breaks his leg while working at a weekly Saturday-only job has his compensation calculated upon his average weekly wage from that job, not his regular forty-hour-a-week employment." *Richardson v. N.C. Dept. of Corr.*, 345 N.C. 128, 136, 478 S.E.2d 501, 506 (1996) (citation omitted).

In *McAninch*, the employee was a school cafeteria worker who worked forty-two weeks out of the year in that position and took seasonal employment during school summer vacation. 347 N.C. at 128, 489 S.E.2d at 376. The Full Commission used method three under § 97-2(5) to calculate the employee's average weekly wage, dividing the wages earned during employee's work at the school by the number of weeks worked. This Court reversed the Commission and used method five to recalculate the employee's wages, including wages from her non-school summer employment. *Id.* at 130-31, 489 S.E.2d at 378.

The Supreme Court reversed, reasoning that calculating the employee's average weekly wage by including wages from the additional jobs was unfair to the employer:

It seems reasonable to us that the Legislature, having placed the economic loss caused by a workman's injury upon the employer for whom he was working at the time of the injury, would also relate the amount of that loss to the average weekly wages which that employer was paying the employee. Plaintiff, of course, will greatly benefit if his wages from both jobs are combined; but, if this is done, [the employer] and its carrier, which has not received a commensurate premium—will be required to pay him a higher weekly compensation benefit than [the employer] ever paid him in wages. . . . [T]o combine plaintiff's wages from his two employments would not be fair to the employer.

*Id.* at 133, 489 S.E.2d at 379 (quoting *Barnhardt v. Yellow Cab Co.*, 266 N.C. 419, 427, 146 S.E.2d 479, 485 (1966)). The Court made "no distinction between the concurrent employment involved in *Barnhardt* and sporadic, seasonal employment [in *McAninch*]." *Id.* at 134, 489 S.E.2d at 380. The Court in *McAninch* also explicitly over-ruled our decision in *Holloway v. T.A. Mebane, Inc.*, 111 N.C. App. 194, 431 S.E.2d 882 (1993), the case most similar to the present facts. In *Holloway*, the employee hung doors and installed weatherstrip-ping, working for various employers for short periods of time and being paid on a job-by-job basis. *Id.* at 195, 431 S.E.2d at 882. We affirmed the Commission which had calculated the employee's aver-age weekly wage by averaging his net income from all employers for the years preceding his injury. *Id.* at 199-200, 431 S.E.2d at 885. In *McAninch*, the Court specifically overruled this practice as inconsis-tent with prior case law and the relevant statutes: "Accordingly, we hold that the definition of 'average weekly wages' and the range of alternatives set forth in the five methods of computing such wages, as specified in the first two paragraphs of N.C.G.S. § 97-2(5), do not allow the inclusion of wages or income earned in employment or work other than that in which the employee was injured." *McAninch*, 347 N.C. at 134, 489 S.E.2d at 380.

Here, the Commission approximated employee's average weekly wage by dividing his earnings from all his stunt work over the pre-ceding year by 52 weeks. Plaintiff contends that the Commission erred in considering income earned in jobs other than the six-week contract employment he had with employer. In light of the cases dis-cussed *supra*, we are compelled to agree. The Commission faced a difficult task in determining employee's average weekly wage, and the calculation it used does appear to "most nearly approximate the amount which the injured employee would be earning were it not for the injury." N.C.G.S. § 97-2(5).[1]

However, we can find no meaningful distinction between the Commission's calculation here and that in *Holloway*, which the

---

1. We also note that the method used here gives substantially the same result as the fourth method under N.C.G.S. § 97-2(5) might have done. Finding 4 states that there was not another stunt man of the "same grade and character" in the local community from which the Commission could draw insight; this is not surprising given employee's unusual occupation and his apparently high level of achievement in it. Were another stunt person of the "same grade and character" as Mr. Barrett to be injured, surely the Commission could regard Mr. Barrett's total annual earnings from all work in approxi-mating that hypothetical employee's average weekly wage. However, under our case law, Mr. Barrett is prohibited from doing the same here.

Supreme Court has specifically disallowed. Unfortunately, *McAninch* provides no guidance as to the correct calculation to employ under method five as that case was remanded to the Commission for reinstatement of its award based upon a Form 21 agreement between the parties about the employee's weekly wage. 347 N.C. at 134, 489 S.E.2d at 380. We remand to the Commission for recalculation of employee's average weekly wage without consideration of income earned from other employers. However, should discretionary review be granted, we urge the Supreme Court to consider this issue and provide guidance to the Commission and this Court by suggesting a calculation that would most nearly approximate employee's earnings before the injury without considering his wages from other employers.

On remand, the Commission shall take such additional evidence as necessary, specify the method employed, and make sufficient findings in order to support its opinion and award.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED.

Judges WYNN and McGEE concur.