MARIO DE ASIS *vs.* FRAM CORPORATION.

MAY 31, 1951.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

FLYNN, C. J.   This petition was brought by an employee to review a preliminary agreement under the workmen's compensation act, general laws 1938, chapter 300, article II, §13, as amended by public laws 1941, chap. 1057, chiefly on the ground that the compensation therein provided was computed on an erroneous wage rate.   The case is before this court on the employee's appeal from a decree of the

superior court denying the petition on the basis of findings that the compensation specified in the preliminary agreement was computed correctly and that he was not partially incapacitated.

The case was previously before this court. *De Asis* v. *Fram Corp.*, 76 R. I. 331, 69 A.2d. 818. At that time we sustained the employee's appeal on certain grounds therein stated and remanded the case for a hearing and decision on the question whether the compensation under the agreement should be based solely on the average weekly wages received by the employee from the respondent in whose employ he was injured or on the combined earnings received by him from all the employments he may have had at the time of the accident.

The record shows that petitioner was employed on November 8, 1944 by the respondent corporation as a working chef at a wage of $50 weekly. On his first day of work for said respondent he sustained a sprained shoulder by accident but was not incapacitated immediately. He continued to work through January 1, 1945 when he became totally incapacitated. Accordingly a preliminary agreement requiring respondent to pay compensation at the rate of $20 weekly during the employee's total incapacity under the workmen's compensation act was entered into and was approved by the director of labor. Payments thereunder were made from January 2 to June 25, 1945, and thereafter a settlement receipt was executed and was approved by the director of labor. On March 12, 1947 the employee brought the instant petition for review alleging that he was partially incapacitated and that the preliminary agreement had been computed on an erroneous wage rate.

In addition to his regular employment with this respondent, petitioner also worked nights at a cafe. That employment, from which petitioner claims to have been earning $40 weekly plus commissions or tips averaging from $10 to $15 per week, was entirely independent of the work for respondent in the course of which he was

injured. The compensation payable under the preliminary agreement was computed on an average weekly wage of $50, which is not seriously disputed if it is to be based solely on the wages paid by this respondent to the petitioner for his regular week's work.

Petitioner contends that the wage rate under the preliminary agreement was computed erroneously in that it should have been based upon the total earnings from all his employments at or about the time of the accident. In support thereof he argues chiefly (1) that the ordinary and natural meaning of the language in the. act, as well as its history, demands the construction of the law as advocated by him; (2) that the legislature, in amending art. II, §13, omitted certain language formerly limiting "average weekly wages" to those received from the employer "in whose service he is injured," thereby disclosing an intention to accomplish the change he advocates; (3) that such a construction is necessary to effectuate the purpose of the act, namely, to compensate the worker for loss of his earning capacity; and (4) that the weight of authority is in favor of such a view.

The controlling question, which has not been previously decided, is whether "average weekly wages, earnings or salary" as defined in G. L. 1938, chap. 300, art. II, §13, as amended by P. L. 1941, chap. 1057, contemplates a computation based on the employee's total earnings from all his employments, or whether such average weekly wages are to be computed on a full-time weekly basis from the earnings received from the employer in whose employment he was injured. The first and second contentions of the employee are so related that they may be considered together. Prior to the amendment the statute provided for the computation of average weekly wages according to a comparatively involved and express formula that included "the total earnings of the injured employee received from the employer in whose service he is injured * * *." Art. II,

§13 (a). That formula was changed by P. L. 1941, chap. 1057, and now reads as follows:

"Sec. 13. The 'average weekly wages, earnings, or salary' of an injured employee shall be ascertained as follows:

"(a) 'Average weekly wages, earnings or salary,' shall mean the average weekly wage earned by the employee at the time of the injury, reckoning wages as earned while working full time. 'Full time' shall mean not less than 40 times the hourly rate of wages or earnings.

"(b) If the hourly earnings of the employee cannot be ascertained, or if no pay has been designated for the work required, the wage, for the purpose of calculating compensation, shall be taken to be the usual wage paid for similar services where such services are rendered by paid employees."

It is clear that the language of this amendment does not specifically provide that average weekly wages are to be computed on an employee's total earnings from several unrelated employments. If that radical and important change were intended, it is not likely that the legislature would have left such intent solely to a questionable inference. Presumably it was known that under compensation acts in other states similar extensions in computing average weekly wages, whenever intended, were accomplished only by specific language or amendments that left no doubt or necessity for such an inference.

It is true that the words "in whose service he is injured" are found in the former statute and are not expressly repeated in the amendment. But the amendment in changing the context generally also has omitted several other words and phrases which were in the prior statute. The omission of these other words, including "total earnings," especially when considered with the express changes in the formula, detracts considerably from the petitioner's contention that the legislature by omitting certain qualifying words must have intended to change the basis for computing "average weekly wages" so as to include the employee's total

earnings from all employments. Moreover, when the whole amendment is compared with the corresponding provisions in the former statute we get a clearer indication that the legislature merely intended to simplify the formula in §13 so that it would be easy to apply uniformly and would include within its scope certain casual workers and regular part-time employees, as well as employees in depression periods and perhaps others, whose earning capacities might have been either difficult to compute or wholly inadequate under the earlier formula.

In any event we are of the opinion that the legislature did not intend thereby to broaden the base for computing average weekly wages to include "total earnings" from several employments which might be wholly unrelated to the employee's contract with the employer in whose service he was injured. In our judgment there is an adequate reason for the amendment as above set forth. Neither the natural meaning of the words nor the history of the act requires that we here depart from the proper standard used in other provisions of the act, namely, the relationship of employer and employee reasonably established and related to a particular contract of employment.

We do not agree with petitioner's third contention that his proposed construction is necessary to effectuate the purpose of the act. While the usual compensation to a worker thereunder is based on the loss of earning capacity resulting from injury, it is also required that such incapacity be caused by an injury "arising out of and in the course of his employment." That condition is not satisfied if the injury is received in the course of some other work unrelated to his contract of employment. From the beginning the purpose of the act in general, including computation of average weekly wages or earnings, has been related substantially to the contract with a particular employer.

Our act originally was modeled to a certain extent on the existing English statute enacted in 1906, 6 Edw. VII, chap. 58. That statute provided in the First Schedule

(2) (b) the following rule: "where the workman had entered into concurrent contracts of service with two or more employers under which he worked at one time for one such employer and at another time for another such employer, his average weekly earnings shall be computed as if his earnings under all such contracts were earnings in the employment of the employer for whom he was working at the time of the. accident." The framers of our act in 1912 adopted such a provision. But by P. L. 1915, chap. 1268, the legislature amended that section so as to provide for computation of average weekly wages only on "the total earnings of the injured employee received from the employer in whose service he is injured." In this connection it is worth noting that under the earlier English statute of 1897 when it substantially resembled the provisions of our act as amended by chap. 1268, total earnings from the particular employer in whose service the employee was injured was the only standard for computing average weekly earnings. See *Hathaway* v. *Argus Printing Co., Ltd.,* 1 Q. B. 96 (1901).

Likewise under the Massachusetts statute before its amendment the formula for computing average weekly wages was somewhat similar to that in our act. There the definition of average weekly wages confined "the ascertainment of wages to the actual employment at the time of the injury, save in the single instance where that is impossible by reason of brief employment in a line of work unusual to the employer." See *Gagnon's Case,* 228 Mass. 334, 337.

Another similar example is found in the state of Pennsylvania where the statute §309 (77 PS §582) contains the following provision: "Where the employe is working under concurrent contracts with two or more employers, his wages from all employers shall be considered as if earned from the employer liable for compensation." See *Brown* v. *Saltillo Borough Council,* 137 Pa. Super. 599. These examples illustrate the necessity for specific provision

in a statute under which total earnings from several concurrent employers can be properly considered in computing average weekly wages. The petitioner relies on many cases which were decided under statutes substantially like these. But the legislature in those states enacted a suitable provision while here the petitioner would have this court supply it. That is not the province of the court and in our judgment the purpose of the act as written can be effectuated without adopting petitioner's construction.

The petitioner's fourth contention is that his construction is supported by the great weight of authority. Many cases are referred to in his brief and the language and results relied on are to be found in those cases. However, petitioner entirely overlooks the fact that with one or two possible exceptions the acts then under consideration apparently contained provisions justifying a computation based upon the total earnings from several joint or concurrent employers. Examples of some of these acts have been heretofore pointed out. In our opinion the weight of authority does not support petitioner's contention that in the absence of such an appropriate provision the average weekly wages are computable on the basis of total or combined earnings from all unrelated employments.

The case chiefly relied on by petitioner seems to be that of *Wells* v. *Industrial Comm'n of Arizona,* 63 Ariz. 264. But even there the opinion indicates that the statute involved resembled substantially the one in California, which is not the same as the act here; and that opinion also cited and relied considerably upon the cases of *Bamberger Electric R. Co.* v. *Industrial Comm'n of Utah,* 59 Utah 257, and *Western Metal Supply Co.* v. *Pillsbury,* 172 Cal. 407, both of which are understandable.

In the *Bamberger Electric R. Co.* case an employee who was killed worked for two companies and served both more or less concurrently in the same railroad station. Each company knowing and approving of his other work and contract paid for only one half his time each day. The

real issue there was whether as a matter of law the deceased had been *jointly* employed by both so as to make *both* liable. It was found that the contracts were separate and not joint so that only one employer was liable for death benefits under that statute. The court then pointed out, without discussion of the California act, that in *Western Metal Supply Co.* v. *Pillsbury, supra,* computation of average wages for death benefits had been allowed by the California court to the dependents of a watchman upon the aggregate amount received from different employers, and therefore approved a similar computation.

That conclusion is consistent with provisions of a statute like that of California which provided in certain circumstances for computation of average weekly wages "If the injured employee has worked in the same employment, *whether for the same employer or not,* during substantially the whole of the year immediately preceding his injury * * *." (italics ours) See California statutes 1913, chap. 176, sec. 17 (a) (1). It is also consistent with an apparently later provision or amendment of that act for computing average weekly earnings "Where the employee is working *for two or more employers* at or about the time of the injury * * *." (italics ours) Deering's Cal. Codes, Labor, div. 4, pt. 2, chap. 1, §4453 (b). No such provision, however, is found in the act under which the instant petition was brought.

Further in *Western Metal Supply Co.* v. *Pillsbury, supra,* the California court relied to some extent on *Gillen's Case,* 215 Mass. 96, which would be in point for that and also for the *Bamberger* case, *supra.* In the *Gillen* case the employer contracted with a longshoreman with full knowledge that "the custom of the employment is for continuous work of a specified kind for different employers." In other words, for purposes of computation in that case it was reasonable to find by inference that there was an understanding, based on the nature and necessities of the employment, the prevailing custom, and the knowledge and approval of the

parties, that the employer's contract contemplated and approved the employee's working for several others to an extent that such other services in effect might be related to the course of his particular employment. At any rate the *Gillen* case was later restricted to its facts as an exception to the rule. *King's Case*, 234 Mass. 137. And in harmony therewith under the Massachusetts statute when it was somewhat similar to though not identical with ours are *Bartoni's Case*, 225 Mass. 349, *Rice's Case*, 229 Mass. 325, and *Gagnon's Case, supra.*

From a review of the cases cited by petitioner and from many others we are of the opinion that the weight of authority is not in favor of the construction urged by him. Some exceptions may be found, but in the absence of appropriate provisions or unusual facts not here presented we find no convincing authority that average weekly wages or earnings should be computed under a formula like sec. 13 (a) (b) upon the basis of total or combined earnings from all the employee's unrelated employments at or about the time of his injury. The cases must be read in the light of the provisions in the different statutes which in turn must be applied according to the particular facts of a given case. In our judgment the wage rate in the circumstances of the instant case was properly computed on the total weekly wages received by the employee from the respondent employer in whose service he was injured.

The petitioner also seems to argue that the trial justice erred in finding that there was no partial incapacity. His contention in that regard really stems from his misconception of the law in respect to a compensable injury and to the computation of his average weekly earnings and wages under the act. He assumes that his incapacity is controlled by evidence of his combined earnings from all employments. The trial justice found that he had no incapacity from performing his regular work with this respondent and there was evidence to support that conclusion. Mere loss of the income from another job in the cafe or the existence

of a physical injury that was not compensable under the act would not necessarily be a material and controlling consideration as to his capacity to perform his regular work with the respondent. In the absence of fraud, and none is claimed, the finding in this respect is one of fact and is conclusive under the act.

The petitioner's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*William J. George,* for petitioner.

*Worrell & Hodge, Lee A. Worrell,* for respondent.