JOHN THOMPSON, Employee, Plaintiff-Appellant v. STS HOLDINGS, INC., Employer, and WAUSAU INSURANCE COMPANIES, Carrier, Defendants-Appellees

No. COA10-581

(Filed 21 June 2011)

### 1. Workers' Compensation— calculation of compensation rate—fifth method—proper method

The Industrial Commission did not err in a workers' compensation case in calculating plaintiff's compensation rate pursuant to the fifth method enumerated in N.C.G.S. § 97-2. Plaintiff agreed that method one was not the appropriate method by which to calculate his average weekly wage and there was sufficient evidence before the Commission to support its findings that methods two, three, and four would not lead to fair and just results.

### 2. Workers' Compensation— calculation of compensation rate—fifth method—proper calculation

The Industrial Commission did not err in a workers' compensation case by calculating wages earned by plaintiff while in the employ of defendant in a fifty-two week period, then dividing that amount by fifty-two in order to obtain plaintiff's average weekly wage pursuant to the fifth method enumerated in N.C.G.S. § 9-72.

### 3. Workers' Compensation— calculation of compensation rate—exclusion of per diem, travel pay, and wage advances proper

The Industrial Commission did not err in a workers' compensation case in excluding *per diem*, travel pay, and wage advances from the calculation of plaintiff's earnings while working for defendant. Competent evidence existed in the record to support the Commission's findings of fact that those items were not advanced to plaintiff in lieu of wages.

### 4. Workers' Compensation— reduction in compensation— equitable estoppel not considered—no error

The Industrial Commission did not err in a workers' compensation case by failing to consider equitable estoppel as a means of preventing defendant from requesting that the Commission reduce the amount of compensation defendant was providing plaintiff. Plaintiff affirmatively denied the existence of any agreement between plaintiff and defendant concerning compensation, and expressly challenged the amount of compensation plaintiff was receiving from defendant.

**5. Workers' Compensation— credit for overpayment of compensation—no error**

The Industrial Commission did not err in a workers' compensation case in allowing a credit to defendants for overpayment of compensation, as well as in failing to consider estoppel. The Court of Appeals had already rejected plaintiff's estoppel argument and plaintiff made no argument that the Commission abused its discretion by awarding defendants a credit.

**6. Appeal and Error— preservation of issues—failure to cite authority**

Plaintiff failed to cite to any authority on appeal and thus failed to preserve for appellate review the argument that the Industrial Commission erred in a workers' compensation case by allowing the admission of certain evidence.

Appeal by Plaintiff from amended opinion and award entered 24 February 2010 by the North Carolina Industrial Commission. Heard in the Court of Appeals 1 December 2010.

*Pamela W. Foster for Plaintiff-Appellant.*

*Hedrick, Gardner, Kincheloe & Garofalo, L.L.P., by Matthew J. Ledwith and M. Duane Jones, for Defendants-Appellees.*

McGEE, Judge.

Plaintiff was an Airframe and Power Plant Mechanic (A&P mechanic) who worked contract jobs in the airline maintenance industry for various employers. STS Holdings, Inc. (STS) is a company specializing in providing contract aviation technicians to the aerospace industry. Plaintiff was working for STS in February 2008, pursuant to a contract between STS and TIMCO at TIMCO's facility in Greensboro. While working for STS on the TIMCO contract, Plaintiff tripped over a metal plate on 18 February 2008 and suffered a compensable injury by accident. At the time of Plaintiff's injury, the workers' compensation insurance carrier for STS was Wausau Insurance Companies (together with STS, Defendants). The compensability of Plaintiff's injury by accident is not in dispute. Defendants initially paid Plaintiff compensation in the amount of $213.34 per week. This amount was subsequently increased to $329.58 per week. Plaintiff was compensated at this rate until an opinion and award filed on 28 July 2009 by Deputy Commissioner J. Brad Donovan reduced

Plaintiff's temporary total disability compensation to $30.00 per week. Plaintiff appealed the deputy commissioner's opinion and award to the Commission, contesting the compensation rate as determined by the deputy commissioner. The Commission filed its opinion and award on 24 February 2010, wherein it affirmed the $30.00 per week compensation rate, and concluded that "Defendants are entitled to a credit for payments that have already been made in excess of the compensation rate set forth [herein]."

In the fifty-two week period immediately preceding the accident, Plaintiff had worked a total of fourteen days for STS on five separate contracts. The bulk of Plaintiff's income in that fifty-two week period came from contracts with other employers. STS paid Plaintiff an hourly wage of $7.50 an hour for Plaintiff's work with TIMCO. If Plaintiff worked overtime hours for STS, Plaintiff would earn overtime wages. STS also disbursed additional monies to Plaintiff while Plaintiff was in its employ. Plaintiff received a *per diem* amount for living expenses under certain circumstances. The Commission found as fact:

> The per diem is paid as non-taxable, is set at differing amounts according to the costs of staying in any given location, and is meant to reimburse employees for cost of living expenses while they are on the road. The per diem is set as a maximum weekly amount, and is paid on a prorated basis if the employee works fewer than 40 hours in a particular week. Per diem payments are only available if a worksite is located greater than 50 miles from the employee's permanent residence and the employee certifies to [STS] that he is maintaining a temporary residence nearer to the worksite.

The Commission further found that the method used by STS to calculate the *per diem* rate to be paid to an employee was determined by first consulting the maximum allowable rate as set forth on the federal Government Services Administration website. STS would then reduce that amount by twenty percent and make additional downward adjustments related to the local cost of living, if applicable.

The Commission also found that Plaintiff received travel pay for certain jobs to help defray the cost associated with travelling to a jobsite. An officer for STS testified

> that travel pay is used to assist employees in travelling to the job and is paid as a business expense reimbursement. . . . [T]ravel pay

**THOMPSON v. STS HOLDINGS, INC.**

[213 N.C. App. 26 (2011)]

is typically tied to a minimum stay at a particular work cite [sic], and if an employee does not meet the minimum stay, the travel pay is deducted from the employee's final check for that contract as a cost or wage advance.

The Commission further found that STS would sometimes give an employee wage advances. These advances constituted advance pay for work an employee had not yet performed, but was expected to perform. These advances were "deducted from the employee's subsequent post-tax earnings."

Finally, the Commission found that Plaintiff's "payroll records include[d] additional categories labeled 'RC' and 'RE.' However, the record of evidence [did] not include sufficient information for the . . . Commission to determine how, or whether, amounts listed in association with those categories may have influenced the wages earned by [P]laintiff."

Based in part on these findings of fact, the Commission concluded that, while working for STS, Plaintiff's wages consisted exclusively of his hourly wage and overtime pay. The Commission further concluded that the *per diem*, travel expenses, wage advances, and the additional "RC" and "RE" amounts did not constitute payments made by STS to Plaintiff in "lieu of wages."

Pursuant to N.C. Gen. Stat. § 97-2(5), the Commission conducted an analysis in order to determine Plaintiff's average weekly wage during his employment with STS. After conducting its analysis under N.C.G.S. § 97-2(5), the Commission determined, pursuant to N.C. Gen. Stat. § 97-29, that Plaintiff was entitled only to the "minimum disability compensation rate of $30.00 per week." Pursuant to N.C. Gen. Stat. § 97-42, the Commission granted Defendants "a credit for disability compensation payments that [had] been made in excess of the rate of $30.00 per week found applicable herein." The Commission based this determination on findings that, were it to utilize certain methods of calculation set forth in N.C.G.S. 97-2(5), Defendants would be obligated to pay compensation based upon an average weekly wage far in excess of what Plaintiff would have earned working for STS. Plaintiff appeals.

I.

We review opinions and awards of the Commission pursuant to the following standard:

**THOMPSON v. STS HOLDINGS, INC.**

[213 N.C. App. 26 (2011)]

> The Commission has exclusive original jurisdiction over workers' compensation cases and has the duty to hear evidence and file its award, "together with a statement of the findings of fact, rulings of law, and other matters pertinent to the questions at issue." N.C.G.S. § 97-84 (2005). Appellate review of an award from the Industrial Commission is generally limited to two issues: (i) whether the findings of fact are supported by competent evidence, and (ii) whether the conclusions of law are justified by the findings of fact. If the conclusions of the Commission are based upon a deficiency of evidence or misapprehension of the law, the case should be remanded so " 'that the evidence [may] be considered in its true legal light.' "

*Chambers v. Transit Mgmt.*, 360 N.C. 609, 611, 636 S.E.2d 553, 555 (2006) (citations omitted).

> The findings of fact made by the Commission are conclusive upon appeal when supported by competent evidence, even when there is evidence to support a contrary finding. In weighing the evidence, the Commission is the sole judge of the credibility of the witnesses and the weight to be given to their testimony, and may reject a witness' testimony entirely if warranted by disbelief of that witness. However, before finding the facts, the Industrial Commission must consider and evaluate all of the evidence. Although the Commission may choose not to believe the evidence after considering it, it may not wholly disregard or ignore competent evidence.

*Lineback v. Wake County Board of Commissioners*, 126 N.C. App. 678, 680, 486 S.E.2d 252, 254 (1997) (citations omitted).

II.

[1] Plaintiff contends in his first argument that the Commission erred in calculating his compensation rate pursuant to N.C.G.S. § 97-2(5). We disagree.

> The calculation of an injured employee's average weekly wages is governed by N.C.G.S. § 97-2(5). This statute sets forth in priority sequence five methods by which an injured employee's average weekly wages are to be computed, and in its opening lines, this statute defines or states the meaning of "average weekly wages."

*McAninch v. Buncombe County Schools*, 347 N.C. 126, 129, 489 S.E.2d 375, 377 (1997). N.C. Gen. Stat. § 97-2(5) (2009) states in relevant part:

**THOMPSON v. STS HOLDINGS, INC.**

[213 N.C. App. 26 (2011)]

"Average weekly wages" shall mean [1] the earnings of the injured employee in the employment in which he was working at the time of the injury during the period of 52 weeks immediately preceding the date of the injury, including the subsistence allowance paid to veteran trainees by the United States government, provided the amount of said allowance shall be reported monthly by said trainee to his employer, divided by 52; [2] but if the injured employee lost more than seven consecutive calendar days at one or more times during such period, although not in the same week, then the earnings for the remainder of such 52 weeks shall be divided by the number of weeks remaining after the time so lost has been deducted. [3] Where the employment prior to the injury extended over a period of fewer than 52 weeks, the method of dividing the earnings during that period by the number of weeks and parts thereof during which the employee earned wages shall be followed; provided, results fair and just to both parties will be thereby obtained. [4] Where, by reason of a shortness of time during which the employee has been in the employment of his employer or the casual nature or terms of his employment, it is impractical to compute the average weekly wages as above defined, regard shall be had to the average weekly amount which during the 52 weeks previous to the injury was being earned by a person of the same grade and character employed in the same class of employment in the same locality or community.

**[5]** But where for exceptional reasons the foregoing would be unfair, either to the employer or employee, such other method of computing average weekly wages may be resorted to as will most nearly approximate the amount which the injured employee would be earning were it not for the injury.

In *McAninch* our Supreme Court stated:

The final method [method five], as set forth in the last sentence, clearly may not be used unless there has been a finding that unjust results would occur by using the previously enumerated methods. Ultimately, the primary intent of this statute is that results are reached which are fair and just to both parties. "Ordinarily, whether such results will be obtained . . . is a question of fact; and in such case a finding of fact by the Commission controls [the] decision."

*McAninch*, 347 N.C. at 130, 489 S.E.2d at 378 (citations omitted); *see also Conyers v. New Hanover Cty. Schools*, 188 N.C. App. 253, 259,

654 S.E.2d 745, 750 (2008) (Method five "may only be utilized subsequent to a finding that the previous methods were either inapplicable, or were applicable but would fail to produce results fair and just to both parties. *Wallace v. Music Shop, II, Inc.*, 11 N.C. App. 328, 181 S.E.2d 237 (1971).").

In the case before us, the Commission addressed each of the five methods enumerated in N.C.G.S. § 97-2(5). The Commission determined that method one was inapplicable because Plaintiff "did not work continuously during the 52 weeks preceding his injury. *Loch v. Entertainment Partners*, 148 N.C. App. 106, 112, 557 S.E.2d 182, 186 (2001)[.]" Plaintiff agrees that method one was not the appropriate method by which to calculate his average weekly wage. The Commission concluded, upon the evidence before it, that methods two, three, and four could not be used to achieve fair and just results for both parties. Specifically, the Commission determined that use of any of these methods would require Defendants to compensate Plaintiff at a rate in excess of that warranted by the work Plaintiff would have performed for STS and, therefore, utilization of methods two, three, or four would not be fair or just to Defendants.

Though the Commission sets out as conclusions of law its determination of whether fair and just results can be achieved by the methods enumerated in N.C.G.S. § 97-2(5), they are findings of fact and bind our Court if there is competent evidence in the record to support the findings. *McAninch*, 347 N.C. at 130, 489 S.E.2d at 378. We hold that there was sufficient evidence before the Commission to support its findings that methods two, three, and four would not lead to fair and just results. Therefore, we affirm the Commission's decision to apply method five in calculating Plaintiff's average weekly wage.

[2] Plaintiff further argues that the Commission erred in the manner in which it applied method five to determine Plaintiff's average weekly wage. We disagree.

Specifically, Plaintiff argues that, although the Commission purported to use method five, in reality it improperly used method one to determine Plaintiff's average weekly wage. If Plaintiff's contention were correct, the Commission would have erred. "Although '[w]hen the first method of compensation can be used, it *must* be used[,]' that method cannot be used when the injured employee has been working in that employment for fewer than 52 weeks in the year preceding the date of the accident. *Loch v. [Entertainment Partners]*, 148 N.C. App. 106, 557 S.E.2d 182 (2001)." *Conyers*, 188 N.C. App. at 258, 654 S.E.2d at 750 (citation omitted).

**THOMPSON v. STS HOLDINGS, INC.**

[213 N.C. App. 26 (2011)]

However, our Court in *Conyers*, citing our Supreme Court's opinion in *Joyner v. Oil Co.*, 266 N.C. 519, 146 S.E.2d 447 (1966), and our Court's opinion in *Barber v. Going West Transp., Inc.*, 134 N.C. App. 428, 517 S.E.2d 914 (1999), held that the Commission may, pursuant to method five, determine an employee's average weekly wage by determining the employee's actual wages earned in the fifty-two week period preceding the injury by accident--in the employment in which Plaintiff suffered the compensable injury by accident—and dividing that amount by fifty-two. *Conyers*, 188 N.C. App. at 259-61, 654 S.E.2d at 750-51. This is because "[t]he language of the fifth calculation method neither requires nor prohibits any specific mathematical formula from being applied; instead, it directs that the average weekly wages calculated must 'most nearly approximate the amount which the injured employee would be earning were it not for the injury.' N.C. Gen. Stat. § 97-2(5)." *Id.* at 261, 654 S.E.2d at 751. The focus of method five is on the result, not the precise means by which that result is obtained. *Id.* at 261, n. 8, 654 S.E.2d at 751, n. 8. We hold that the Commission did not err by calculating wages earned by Plaintiff while in the employ of STS in a fifty-two week period, then dividing that amount by fifty-two in order to obtain Plaintiff's average weekly wage for his employment with STS.

The Commission recognized in its fourth conclusion of law that it was limited to considering Plaintiff's employment *with STS* in calculating Plaintiff's average weekly wage, stating:

Although [P]laintiff was also employed by employers other than [STS] during the 52 weeks preceding [P]laintiff's injury by accident, the calculation of [P]laintiff's average weekly wage must be based only on [P]laintiff's employment with [STS]. *See Barnhardt v. Yellow Cab Co.*, 266 N.C. 419, 146 S.E.2d 479 (1966); *McAninch v. Buncombe County Schools*, 347 N.C. 126, 489 S.E.2d 375 (1997) [("Further, with respect to the Court of Appeals' recalculation to include 'wages earned in employment other than that in which the employee was injured,' we hold that this aggregation of wages conflicts with our established law. In defining 'average weekly wages,' N.C.G.S. § 97-2(5) explicitly provides that average weekly wages 'shall mean the earnings of the injured employee in the employment in which he was working at the time of the injury.' N.C.G.S. § 97-2(5) (emphasis added). This issue was exclusively and definitively addressed by this Court in *Barnhardt v. Yellow Cab Co.*, 266 N.C. 419, 146 S.E.2d 479 (1966).) *McAninch*, 347 N.C. at 132-33, 489 S.E.2d at 379].

Plaintiff cites our Court's opinion in *Pope v. Johns Manville*, —— N.C. App. ——, 700 S.E.2d 22 (2010), for the contention that the Commission could aggregate Plaintiff's work for other employers in determining Plaintiff's average weekly wage. Our Court in *Pope* expressly rejected Plaintiff's contention. *Id.* at ——, 700 S.E.2d at 31 (stating "the Supreme Court has clearly held that the Commission cannot, even if it relies on the fifth method for determining a claimant's average weekly wage set out in N.C. Gen. Stat. § 97-2(5), make the necessary calculation by *aggregating or combining* his wages from more than one job").

**[3]** Plaintiff further argues that the Commission erred in excluding *per diem*, travel pay, and wage advances from the calculation of Plaintiff's earnings while working for STS. "Wherever allowances of any character made to an employee in lieu of wages are specified part of the wage contract, they shall be deemed a part of his earnings." N.C.G.S. § 97-2(5). "The determination of whether an allowance was made in lieu of wages is a question of fact[.]" *Greene v. Conlon Constr. Co.*, 184 N.C. App. 364, 366, 646 S.E.2d 652, 655 (2007) (citations omitted). Though Plaintiff argues that evidence in the record supports his contention that he was paid the above items "in lieu of wages," our review of the record shows that competent evidence exists in the record to support the Commission's findings of fact that those items were not advanced to Plaintiff in lieu of wages. Because some competent evidence exists supporting these findings of fact, they are binding on appeal—regardless of whether conflicting evidence might exist. *Lineback*, 126 N.C. App. at 680, 486 S.E.2d at 254.

We recognize that the average weekly wage computed by the Commission does not reflect the total wages Plaintiff would have earned from all employment Plaintiff would have undertaken, and this leaves Plaintiff with compensation greatly reduced from that which he would have recovered had he performed all his contract work through STS alone. We sympathize with the difficult financial position Plaintiff now faces as a result of having been injured while working for STS. However, the General Assembly enacted our workers' compensation act considering what it deemed "fair and just" to *both* parties.

Results fair and just, within the meaning of G.S. 97-2[], consist of such "average weekly wages" as will most nearly approximate the amount which the injured employee would be earning were it not for the injury, *in the employment in which he was working at the time of his injury.*

*Liles v. Electric Co.*, 244 N.C. 653, 660, 94 S.E.2d 790, 796 (1956) (emphasis deleted; emphasis added).

"[N.C.G.S. § 97-2(5)] contains no *specific* provision which would allow wages from any two employments to be aggregated in fixing the wage base for compensation. Plaintiff contends, however, that such authority is implied in method [5], since 'the amount which the injured employee would be earning were it not for the injury' necessarily includes earnings from all sources if the employee had more than one job.

. . . .

It seems reasonable to us that the Legislature, having placed the economic loss caused by a workman's injury upon the employer for whom he was working at the time of the injury, would also relate the amount of that loss to the average weekly wages which that employer was paying the employee. Plaintiff, of course, will greatly benefit if his wages from both jobs are combined; but, if this is done, [the employer] and its carrier, which has not received a commensurate premium—will be required to pay him a higher weekly compensation benefit than [the employer] ever paid him in wages. . . . [T]o combine plaintiff's wages from his two employments would not be fair to the employer. Method [5], 'while it prescribes no precise method for computing "average weekly wages," sets up a standard to which results fair and just to both parties must be related.'

After having specifically declared, in the usual situations to which method (1) is applicable, that an injured employee's average weekly wages *shall be* the wages he was earning in the employment in which he was injured, had the Legislature intended to authorize the Commission in the exceptional cases to combine those wages with the wages from *any* concurrent employment, we think it would have been equally specific. As was said in *De Asis v. Fram Corp.*, [78 R.I. 249, 253, 81 A.2d 280, 282 (1951)]: 'If that radical and important change were intended, it is not likely that the legislature would have left such intent solely to a questionable inference.'

. . . .

We hold that, in determining plaintiff's average weekly wage, the Commission had no authority to combine his earnings from the employment in which he was injured with those *from any other*

*employment. Barnhardt,* 266 N.C. at 427-29, 146 S.E.2d at 484-86 (final emphasis added)."

*McAninch,* 347 N.C. at 133-34, 489 S.E.2d at 379-80 (citations omitted). It is the province of the General Assembly, not this Court, to make these policy determinations. Any result that flows from the enforcement of our state's workers' compensation act, and that is unfair to Plaintiff, is an issue for the General Assembly to address. Plaintiff's first argument is without merit.

### III.

[4] In Plaintiff's second argument, he contends the Commission erred in failing to consider equitable estoppel as a means of preventing Defendants from requesting that the Commission reduce the amount of compensation Defendants were providing Plaintiff. We disagree.

Plaintiff relies on *McAninch* for the proposition that, because Defendants had voluntarily decided to compensate Plaintiff at a weekly rate of $329.58, Defendants should be estopped from contesting the amount of compensation. Plaintiff's reliance on *McAninch* is misplaced. In *McAninch,* the employer and employee had entered into a Form 21 agreement, agreeing on the rate of compensation. The Commission had approved that Form 21 agreement. The employer then attempted to have the Commission reduce the rate of compensation established by that Form 21 agreement. Our Supreme Court held:

Where the employer and employee have entered into a Form 21 agreement, stipulating the average weekly wages, and the Commission approves this agreement, the parties are bound to its terms absent a showing of error in the formation of the agreement. N.C.G.S. § 97-17 provides in pertinent part:

"No party to any agreement for compensation *approved by the Industrial Commission* shall thereafter be heard to deny the truth of the matters therein set forth, unless it shall be made to appear to the satisfaction of the Commission that there has been error due to fraud, misrepresentation, undue influence or mutual mistake, in which event the Industrial Commission may set aside such agreement."

N.C.G.S. § 97-17 (1991). "Thus, where there is no finding that the agreement itself was obtained by fraud, misrepresentation, mutual mistake, or undue influence, the Full Commission may not set aside the agreement, once approved." It is well settled that

**THOMPSON v. STS HOLDINGS, INC.**

[213 N.C. App. 26 (2011)]

"an agreement for the payment of compensation when approved by the Commission is as binding on the parties as an order, decision or award of the Commission unappealed from, or an award of the Commission affirmed upon appeal."

*McAninch*, 347 N.C. at 132, 489 S.E.2d at 378-79 (citations omitted) (emphasis added). In the case before us, Plaintiff presents no evidence that any agreement existed between Plaintiff and Defendants concerning the rate of compensation, much less that an agreement existed that had been approved by the Commission. In fact, it was Plaintiff who requested, pursuant to Form 33, that a hearing be held on the issue of compensation. Plaintiff specifically contended in the Form 33 that the compensation rate he was receiving was "significantly lower than that to which he [wa]s entitled[.]" The Form 33 further stated: "I, [Plaintiff's attorney], respectfully notify [the Commission] that [Plaintiff and Defendants] have failed to reach an agreement in regard to compensation[.]" This Form 33 was filed after Defendants had begun voluntarily compensating Plaintiff. Thus, having affirmatively denied the existence of any agreement between Plaintiff and Defendants concerning compensation, and having expressly challenged the amount of compensation Plaintiff was receiving from Defendants, Plaintiff may not now complain that the Commission held the hearing Plaintiff requested and considered the issue of compensation—the very issue for which Plaintiff requested the hearing. This argument is without merit.

IV.

**[5]** In Plaintiff's next argument, he contends the Commission erred in "allowing a credit to Defendants, as well as [in failing] to consider estoppel." We disagree.

We have already rejected Plaintiff's estoppel argument, and Plaintiff fails to address the issue of estoppel in his fourth argument. Plaintiff fails to cite to the standard of review concerning the grant or denial of a credit for overpayment of compensation. "The decision of whether to grant a credit is within the sound discretion of the Commission. Such decision to grant or deny a credit will not be disturbed on appeal in the absence of an abuse of discretion." *Loch*, 148 N.C. App. at 112-13, 557 S.E.2d at 187 (citation omitted). Plaintiff makes no argument that the Commission abused its discretion by awarding Defendants a credit for overpayment of compensation. We find no such abuse on the record before us. This argument is without merit.

V.

**[6]** In his final argument, Plaintiff contends the Commission erred by allowing the admission of certain evidence. Plaintiff has failed to preserve this argument.

As in Plaintiff's previous argument, Plaintiff fails to cite to any standard of review. Plaintiff, in three sentences, argues that the Commission erred in admitting certain evidence. Plaintiff cites to no authority in this argument and, therefore, also fails to make any argument in his brief that the Commission erred based upon any proper application of the law. Plaintiff's bald and unsupported statements that the Commission erred do not present any proper argument for appellate review. Having failed to make a proper argument, and having failed to cite to any authority, Plaintiff has abandoned this argument. N.C.R. App. P. 28(b)(6); *Dogwood Dev. & Mgmt. Co., LLC v. White Oak Transp. Co.*, 362 N.C. 191, 200, 657 S.E.2d 361, 367 (2008).

Affirmed.

Chief Judge MARTIN and Judge ERVIN concur.