IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA16-558

Filed: 5 September 2017

North Carolina Industrial Commission, No. Y26909

JEFF MYRES, Employee, Plaintiff-Appellant,

v.

STROM AVIATION, INC., Employer, And UNITED STATES FIRE INSURANCE/CRUM & FORESTER INSURANCE COMPANY, Carrier, Defendants-Appellees.

Appeal by plaintiff from opinion and award entered 10 July 2015 by the Full Commission of the North Carolina Industrial Commission. Heard in the Court of Appeals 9 March 2017.

> *Stanley E. Speckhard, PLLC, by Stanley E. Speckhard, for plaintiff-appellant.*
>
> *Cranfill Sumner & Hartzog, LLP, by Jaye E. Bingham-Hinch, for defendant-appellees.*

STROUD, Judge.

Plaintiff, Jeffery Myres appeals from the opinion and award of the Full Commission concluding that: (1) plaintiff's per diem payments were not made in lieu of wages, but were reimbursement for plaintiff's business-related living expenses; (2) plaintiff's average weekly wage was $340.62; and (3) plaintiff was not entitled to temporary total disability benefits from 20 July 2013 through 18 August 2013.

Because the Commission's determination of plaintiff's average weekly wage was in accord with precedent of this Court, we affirm.

## I.    Background

Plaintiff suffered a compensable ankle injury while working for defendant-employer and the basic facts regarding his injury and employment are uncontested. Plaintiff is a trained and licensed airplane mechanic with over 21 years of experience in the aviation and aerospace industry.  At the time of his ankle injury, he worked for defendant-employer, Strom Aviation, Inc. ("Strom").  Strom is an employment agency providing contract labor or temporary staffing to companies in the aerospace and aviation industry.  The parties stipulated that an employee-employer relationship existed between the plaintiff and defendant-employer.    Plaintiff's ankle injury occurred on 22 April 2012 and he received medical treatment, including two surgeries. His doctor determined that he had a 25% permanent partial rating for his left ankle on 26 June 2013 and released him to full-duty work without restrictions. After working briefly through Strom at another location, Pat's Aircraft in Georgetown, Delaware, plaintiff stopped working due to ankle pain and as of 20 December 2013, he had not returned to work.

On 16 August 2013, plaintiff initiated a workers compensation claim for his ankle injury by filing a Notice of Accident to Employer and Claim of Employee, and on 12 December 2013 filed a Request that Claim be Assigned for Hearing.  In their

response, defendants disagreed with plaintiff's allegation of his average weekly wage and mileage reimbursement. On 31 December 2014, the deputy commissioner ultimately determined that "the per diem payments received by plaintiff were not made in lieu of wages, but instead were coordinated with a reimbursement for plaintiff's business-related living expenses; . . . plaintiff's average weekly wage upon which workers compensation benefits is calculated is $340.62."[1]

Plaintiff appealed to the Full Commission on 8 January 2015, and ultimately the Full Commission filed an opinion and award on 10 July 2015, denying plaintiff's Motion to Receive Additional Authority and agreeing with the deputy commissioner as to both the per diem payment and plaintiff's average weekly wage of $340.62. Plaintiff submitted a Motion to Reconsider on 29 July 2015, and defendants filed a Response to Plaintiff's Motion to Reconsider on 10 August 2015. Plaintiff's Motion to Reconsider was denied by the Full Commission on 28 January 2016. Plaintiff timely appealed to this Court on 11 February 2016.

On appeal, plaintiff challenges only the Commission's determination of his average weekly wage. Although he states in his brief in a general sense that some of the findings of fact are not supported by the evidence, he does not specifically challenge any finding of fact other than Finding No. 14, which is the Commission's

---

[1] The deputy commissioner and Full Commission also found that "plaintiff was not entitled to temporary total disability benefits from July 20, 2013 through August 18 2013." Plaintiff has not made any argument regarding this part of the Commission's order on appeal, and thus we have not addressed it on appeal.

finding of ultimate fact that the per diem payments he received from Strom were not "paid in lieu of wages" and thus should not be used in the calculation of his average weekly wage. See *Woodard v. Mordecai*, 234 N.C. 463, 472, 67 S.E.2d 639, 645 (1951) ("An ultimate fact is the final resulting effect which is reached by processes of logical reasoning from the evidentiary facts."). Plaintiff's general statements that certain evidentiary findings were not supported by the evidence, without any specific argument as to any particular finding, are simply not sufficient to allow appellate review. *See Allred v. Exceptional Landscapes, Inc.*, 227 N.C. App. 229, 232, 743 S.E.2d 48, 51 (2013) ("Appellate review of an order and award of the Industrial Commission is limited to a determination of whether the findings of the Commission are supported by the evidence and whether the findings in turn support the legal conclusions of the Commission. Unchallenged findings of fact are presumed to be supported by competent evidence and are binding on appeal." (citation and quotation marks omitted)). Since plaintiff's brief does not challenge any specific finding of fact other than finding 14, the other findings of fact are binding on appeal. *See id.* However, we also note that the other findings of fact mentioned by plaintiff are fully supported by the evidence. For example, several of the findings plaintiff mentions in his brief are simply summaries of certain IRS rules, and there is no question that those findings accurately reflect the IRS rules. We have reviewed all of the evidence, and the evidentiary findings upon which Finding No. 14 is based are fully supported by

the record. Plaintiff's real argument is that the Commission should not have relied upon those IRS rules in its analysis, finding of ultimate fact, and conclusion of law.

## II.    Standard of Review

"The Commission has exclusive original jurisdiction over workers' compensation cases and has the duty to hear evidence and file its award, together with a statement of the findings of fact, rulings of law, and other matters pertinent to the questions at issue." *Thompson v. STS Holdings, Inc.,* 213 N.C. App. 26, 20, 711 S.E.2d 827, 829 (2011). Our standard of review for an opinion and award from the Industrial Commission

> is limited to a determination of (1) whether its findings of fact are supported by any competent evidence in the record; and (2) whether the Industrial Commission's findings of fact justify its legal conclusions. The Industrial Commission's conclusions of law are reviewable de novo by this Court.

*Moore v. City of Raleigh*, 135 N.C. App. 332, 334, 520 S.E.2d 133, 136 (1999) (citation and quotation marks omitted). "The determination of whether an allowance was made in lieu of wages is a question of fact[.]" *Greene v. Conlon Constr. Co.*, 184 N.C. App. 364, 366, 646 S.E.2d 652, 655 (2007). Although the question of whether the per diem payments were made "in lieu of" wages may appear to be a legal conclusion subject to *de novo* review, prior cases have clearly established that this issue is an issue of fact. In *Greene*, this Court noted that the defendant's employer and insurance

carrier argued that the Commission "erred by including plaintiff's per diem stipend in its calculation of plaintiff's weekly wage." *Id.* at 366, 646 S.E.2d at 654. This Court affirmed the Commission's inclusion of the per diem in the average weekly wage and noted:

> This issue is addressed by N.C. Gen.Stat. § 97–2(5) (2005), which provides in pertinent part that [w]herever allowances of any character made to an employee in lieu of wages are specified part of the wage contract, they shall be deemed a part of his earnings. Defendants argue first that our common law precedent has not defined the meaning of the words in lieu of wages. We conclude that this phrase needs no special definition. Wages are commonly understood to be payment for labor or services, and in lieu of means instead of or in place of. Thus, allowances made in lieu of wages are those made in place of payment for labor or services.

*Id.* at 364, 646 S.E.2d at 652 (citation and quotation marks omitted). "The Commission's findings of fact may be set aside on appeal only where there is a *complete* lack of competent evidence to support them." *Jones v. Candler Mobile Village,* 118 N.C. App. 719, 721, 457 S.E.2d 315, 317 (1995) (emphasis added).

## III. Findings of Fact

The relevant evidentiary facts, as found by the Commission, regarding Plaintiff's employment are as follows:

> 2. Defendant-employer is an employment agency that provides contract labor and temporary staffing to companies in the aerospace and aviation industries, including Timco.

3. On 17 October 2011, plaintiff entered into an employment contract with defendant-employer to perform structural repair work for Timco.

4. Defendant-employer pays mechanics a straight time hourly wage and an overtime hourly wage, both of which are treated as taxable income. In addition, defendant-employer pays mechanics a non-taxable per diem amount. The per diem payment is intended to reimburse employees for the cost of living expenses while working away from home. Therefore, per diem is only available if the worksite is located more than 50 miles from the employee's permanent residence and the employee certifies that they are maintaining a temporary residence closer to the worksite. Per diem rates are set at a maximum weekly amount, and the amount of the payment is pro-rated if the employee works fewer than 40 hours in a week.

5. Pursuant to plaintiff's employment contract with defendant-employer, plaintiff was to be paid at a taxable "straight time rate" of $7.25 per hour, and an overtime rate of $20.50 per hour. The contract further reflects that plaintiff would be eligible to receive a maximum "per diem" amount of $530.00 per week, which equates to $13.25 per hour for a 40 hour work week. If plaintiff worked less than 40 hours during a week, his per diem earnings would be prorated based upon the $13.25 hourly rate. At the time he entered into the employment contract, plaintiff signed a certificate verifying that his permanent residence continued to be in Hertford, which is more than 50 miles from Timco's facility in Greensboro.

6. Plaintiff testified that he incurred expenses for campground fees, gas, vehicle maintenance, internet service and food, but he was not required to submit receipts to defendant employer to substantiate these expenses.

7. The Internal Revenue Service ("IRS") has established guidelines under which fixed per diem payments at or below the Government Services Administration ("GSA")

maximum allowable amount provided to employees on a uniform, objective basis are deemed substantiated travel expenses without proof from employees of expenses incurred.

8. For an employer to have per diem rates deemed "substantiated," it must follow three rules: (1) the per diem must be paid with respect to ordinary and necessary business expenses incurred or reasonably anticipated to be incurred; (2) the per diem must be reasonably calculated not to exceed the amount of the expenses or anticipated expenses; and (3) the per diem must be paid at or below the federal per diem rate found on the website.

9. Brian Lucker is defendant-employer's Chief Financial Officer. He testified, and the Full Commission finds, that defendant-employer established the maximum amount of per diem plaintiff received while working for defendant-employer at Timco by obtaining the maximum per diem rate listed on the GSA website for Greensboro ($994.00 per week at the time plaintiff entered into his contract with defendant-employer), and adjusting that amount down to $530.00 based upon an informal assessment of local living costs. Based upon this process, $530.00 is the amount of business expenses defendant-employer reasonably anticipated plaintiff would incur in connection with his work at Timco.

10. Where an employer follows the established federal guidelines regarding per diem rates, the IRS does not consider per diem payments made by that employer to be wages or compensation, and therefore, such per diem payments are not subject to employment or withholding taxes.

11. Plaintiff confirmed that his per diem was not taxable and that he did not include per diem payments in his income tax filings. Plaintiff also acknowledged that, while working for defendant-employer, his W-2 reflected straight time wages and overtime pay, but not his per diem

payments.

12. Plaintiff testified that the other aviation related staffing agencies he has worked for paid him in the same manner as defendant-employer paid him, with a straight time hourly rate of $7.00 to $8.00, an overtime hourly rate, and a per diem rate. As with the W-2 plaintiff received in connection with his employment with defendant-employer at Timco, plaintiff testified that the W-2s plaintiff received from the other staffing agencies only reflected his taxable wages.

13. Vocational rehabilitation counselor Michael Fryar was retained by counsel for plaintiff in this matter. Mr. Fryar testified that it would be extremely difficult for defendant-employer and other staffing agencies to recruit mechanics if they paid minimum wage. Mr. Fryar ultimately opined that defendant-employer and other staffing agencies that pay a minimum hourly wage plus a per diem are paying the per diem in lieu of what other employers are paying as wages. Mr. Fryar further testified with respect to plaintiff specifically that the per diem compensation paid to plaintiff by defendant-employer for his work at Timco was paid in lieu of wages.[2]

The Commission's finding of ultimate fact which plaintiff challenges on appeal

is as follows:

14. Based upon the preponderance of the evidence in view of the entire record, the Full Commission finds that the method used by defendant-employer to calculate the rate of per diem paid to plaintiff adjusts for the work locale and

---

[2] We note that some of the Commission's findings are recitations of testimony, but its ultimate finding resolves any uncertainty regarding which testimony the Commission found to be credible. But we encourage the Commission to avoid recitations of testimony in its findings if at all possible as this type of finding can lead to reversal and remand for clarification of findings if we are unable to determine which evidence the Commission found credible. *See People v. Cone Mills Corp.,* 316 N.C. 426, 442, 342 S.E.2d 798, 808 (1986) ("We, nevertheless, suggest to the Commission to make its findings in the form of declarations of facts rather than recitations of testimony.").

conforms to the federally established guidelines for treating an employee's business expenses as deemed substantiated. Therefore, notwithstanding the opinions of Mr. Fryar, the Full Commission finds that the per diem payments received by plaintiff from defendant-employer were coordinated with plaintiff's actual business expenses and were not paid in lieu of wages. Accordingly, pursuant to the parties' stipulations in this case, plaintiff's average weekly wage is $340.62.

The Commission then concluded the following in Conclusion of Law No. 1:

In calculating plaintiff's average weekly wage, the Commission must first determine what constitutes plaintiff's earnings. Regarding per diem payments, N.C. Gen. Stat. § 97-2(5) provides, "[w]herever allowances of any character made to an employee in lieu of wages are specified part of the wage contract, they shall be deemed a part of his earnings." Per diem amounts set a fixed amount regardless of actual employee expenses may be considered part of the employee's earnings. In the instant case, the per diem payments plaintiff received from defendant-employer were adjusted depending on locale, and were made subject to a policy in conformity with federal guidelines that allowed the payments to be treated as tax-deductible business expenses without further proof of actual expenses from the employee. The Full Commission therefore concludes that the per diem payments plaintiff received from defendant-employer were not made in lieu of wages, but instead were reimbursement for plaintiff's business-related living expenses.

(Citation and quotation marks omitted).

IV.     Per Diem Payments

Unlike most worker's compensation cases, this case does not involve any issue regarding the compensability of plaintiff's injury, plaintiff's medical expenses, or

plaintiff's relationship with the employer. The only issue on appeal is the amount of Plaintiff's "average weekly wages." Plaintiff argues that the Commission erred by calculating his "average weekly wages" based only upon his hourly rate and excluding his per diem payments, since he contends that the per diem payments are really paid "in lieu of wages" as defined by N.C. Gen. Stat. § 97-2(5). With the per diem payments, his hourly wages would be $20.50/hour; without it, they are $7.25/hour, or the federal minimum wage. We agree that it seems obvious that an aircraft mechanic with specialized training and over 20 years of experience would be paid far more than minimum wage. We also realize that it is to defendant's advantage to set up its compensation structure to make its employees' "average weekly wages" as low as possible to reduce any potential worker's compensation awards. For that matter, the arrangement is also advantageous to the employee, whose income tax burden is significantly lower if the per diem payments are not taxable income. The employee's problem with this pay structure arises only if he is injured on the job. Overall, it may not seem "fair and just to both parties" for the average weekly wage for an employee such as plaintiff, with many years of specialized experience in aviation mechanics, to have the same compensation rate as a teenager working at the drive-thru window of a fast food restaurant. But it is not this Court's role to weigh the policy considerations involved in how aircraft mechanics are paid and taxed, and we

are constrained by precedent to hold that the Commission did not err in its determination.

Workers compensation payments are based upon the employee's "average weekly wages," which are defined by N. C. Gen. Stat. § 97-2(5), in pertinent part, as follows:

> (5) Average Weekly Wages. -- "Average weekly wages" shall mean the earnings of the injured employee in the employment in which the employee was working at the time of the injury during the period of 52 weeks immediately preceding the date of the injury. . . .
>
> But where for exceptional reasons the foregoing would be unfair, either to the employer or employee, such other method of computing average weekly wages may be resorted to as will most nearly approximate the amount which the injured employee would be earning were it not for the injury.
> Wherever allowances of any character made to an employee in lieu of wages are specified part of the wage contract, they shall be deemed a part of his earnings.

N.C. Gen. Stat. § 97-2(5). "The intent of [G.S. § 97-2(5)] is to make certain that the results reached are fair and just to both parties. . . . Ordinarily, whether such results will be obtained . . . is a question of fact; and in such case a finding of fact by the Commission controls the decision." *Larramore v. Richardson Sports, Ltd. Partners,* 141 N.C. App. 250, 255, 540 S.E.2d 768, 771 (2000) (citation and quotation marks omitted). Plaintiff contends that the Commission erred by its reliance upon its findings that defendant had followed "established federal guidelines" and that the

IRS does not consider the per diem allowances to be wages or compensation (Findings of Fact 7, 8, 9, 10, and 14 and Conclusion of Law 1).

In *Thompson,* this Court addressed the same issue, for an "airframe and power plant mechanic" who was placed by STS Holdings, Inc. -- another staffing company like defendant-employer -- at TIMCO in the Greensboro location. 213 N.C. App. at 27, 711 S.E.2d at 828. He was also injured during his work at TIMCO. The plaintiff in *Thompson* raised several other issues, since he had worked with four other employers in addition to STS during the 52 weeks preceding his injury, but ultimately the Commission and this Court also had to consider whether the per diem payments should have been included in calculation of his average weekly wages. Just as in this case, the Commission determined Thompson*'s* average weekly wage based only upon his hourly rate and excluded the per diem payments, which reduced his compensation rate dramatically, from $329.58 per week to $30.00 per week.

> STS paid Plaintiff an hourly wage of $7.50 an hour for Plaintiff's work with TIMCO. If Plaintiff worked overtime hours for STS, Plaintiff would earn overtime wages. STS also disbursed additional monies to Plaintiff while Plaintiff was in its employ. Plaintiff received a per diem amount for living expenses under certain circumstances.
>
> The Commission found as fact:
>
> The per diem is paid as non-taxable, is set at differing amounts according to the costs of staying in any given location, and is meant to reimburse employees for cost of living expenses while they are on the road. The per diem is set as a maximum weekly amount, and is paid on a pro-

rated basis if the employee works fewer than 40 hours in a particular week. Per diem payments are only available if a worksite is located greater than 50 miles from the employee's permanent residence and the employee certifies to [STS] that he is maintaining a temporary residence nearer to the worksite. The Commission further found that the method used by STS to calculate the per diem rate to be paid to an employee was determined by first consulting the maximum allowable rate as set forth on the federal Government Services Administration website. STS would then reduce that amount by twenty percent and make additional downward adjustments related to the local cost of living, if applicable. The Commission also found that Plaintiff received travel pay for certain jobs to help defray the cost associated with travelling to a jobsite. An officer for STS testified that travel pay is used to assist employees in travelling to the job and is paid as a business expense reimbursement. . . . [T]ravel pay is typically tied to a minimum stay at a particular work cite [sic], and if an employee does not meet the minimum stay, the travel pay is deducted from the employee's final check for that contract as a cost or wage advance. The Commission further found that STS would sometimes give an employee wage advances. These advances constituted advance pay for work an employee had not yet performed, but was expected to perform. These advances were "deducted from the employee's subsequent post-tax earnings." Finally, the Commission found that Plaintiff's "payroll records include[d] additional categories labeled 'RC' and 'RE.' However, the record of evidence [did] not include sufficient information for the . . . Commission to determine how, or whether, amounts listed in association with those categories may have influenced the wages earned by [P]laintiff." Based in part on these findings of fact, the Commission concluded that, while working for STS, Plaintiff's wages consisted exclusively of his hourly wage and overtime pay. The Commission further concluded that the per diem, travel expenses, wage advances, and the additional "RC" and "RE" amounts did not constitute payments made by STS to Plaintiff in "lieu of wages."

*Id.* at 28, 711 S.E.2d at 828. Thus, the *Thompson* Court was considering a payment structure which is essentially identical to plaintiff's in this case, for an essentially identical job, and even at the same worksite.

Just as plaintiff here argues, the *Thompson* plaintiff argued:

> the Commission erred in excluding *per diem*, travel pay, and wage advances from the calculation of Plaintiff's earnings while working for STS. Wherever allowances of any character made to an employee in lieu of wages are specified part of the wage contract, they shall be deemed a part of his earnings. The determination of whether an allowance was made in lieu of wages is a question of fact[.]

*Id.* at 34, 711 S.E.2d at 831 (citation and quotation marks omitted). The *Thompson* Court rejected this argument and stated:

> [O]ur review of the record shows that competent evidence exists in the record to support the Commission's findings of fact that those items were not advanced to Plaintiff in lieu of wages. Because some competent evidence exists supporting these findings of fact, they are binding on appeal—regardless of whether conflicting evidence might exist.

*Id.* at 34, 711 S.E.2d at 832.

Since "[t]he determination of whether an allowance was made in lieu of wages is a question of fact," *Greene,* 184 N.C. App. at 366, 646 S.E.2d at 655 (citations omitted), and since the evidentiary findings which support Finding No. 14 are not specifically challenged, we are not at liberty to conduct *de novo* review of the Commission's determination. We are also constrained by *Thompson,* which

presented essentially the same issue and even the same factual scenario, to hold that the Commission did not err by making its ultimate finding regarding calculation of plaintiff's average weekly wages.

Plaintiff also challenges the Commission's Conclusion of Law No. 1,

> In calculating plaintiff's average weekly wage, the Commission must first determine what constitutes plaintiff's earnings. Regarding per diem payments, N.C. Gen. Stat. § 97-2(5) provides, "[w]herever allowances of any character made to an employee in lieu of wages are specified part of the wage contract, they shall be deemed a part of his earnings." Per diem amounts set a fixed amount regardless of actual employee expenses may be considered part of the employee's earnings. In the instant case, the per diem payments plaintiff received from defendant-employer were adjusted depending on locale, and were made subject to a policy in conformity with federal guidelines that allowed the payments to be treated as tax-deductible business expenses without further proof of actual expenses from the employee. The Full Commission therefore concludes that the per diem payments plaintiff received from defendant-employer were not made in lieu of wages, but instead were reimbursement for plaintiff's business-related living expenses.

While this Court reviews the Commission's conclusions of law *de novo*, this review is "limited to whether the findings of fact support the Commission's conclusions of law." *Starr v. Gaston Co. Bd. Of Educ.,* 191 N.C. App. 301, 310, 663 S.E.2d 322, 328 (2008).

Some of plaintiff's arguments on appeal are based upon federal case law and reference to IRS guidelines regarding treatment of per diem payments, but none of

those arguments were presented to the Full Commission. And since the Commission is not bound to define income in exactly the same way as the IRS or under exactly the same rules, it is unlikely that consideration of any additional information would have changed the result, particularly considering the similarity of the payment methods between this case and *Thompson*. Federal case law and IRS guidelines cannot overcome precedential rulings by North Carolina courts on this issue. The Commission's findings of fact fully support its conclusion of law and we therefore must affirm the order.

## V. Conclusion

Because the Commission's finding of fact that the per diem payments were not made in lieu of wages and its conclusion of law is supported by the findings, we affirm the order and award.

AFFIRM.

Judges DILLON and MURPHY concur.